UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IOWA PORK PRODUCERS ASSOCIATION,<br><br>    Plaintiff,<br><br>v.<br><br>ROB BONTA, et al.<br><br>    Defendants. | No.  1:21-cv-01663-NONE-EPG<br><br><u>ORDER DECLINING TO RECONSIDER EXPEDITING PENDING MOTION</u><br><br><u>ORDER GRANTING EX PARTE MOTION TO TRANSFER CASE TO THE CENTRAL DISTRICT OF CALIFORNIA</u><br><br>***NOTE TO CLERK OF COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA: THIS CASE IS RECOMMENDED FOR DIRECT TRANSFER TO DISTRICT JUDGE CHRISTINA A. SNYDER IN LIGHT OF RELATED* CASE NO. 2:19-cv-08569-CAS-FFM** |

    Plaintiff in this case challenges the constitutionality and seeks to prevent the enforcement of California Health & Safety Code § 25990, *et seq*., which California voters most recently amended through passage of Proposition 12 on November 16, 2018 ("Proposition 12").  Among other things, Proposition 12 prohibits the sale of "whole pork meat" from a "covered animal" that was confined in a "cruel manner" or is the immediate offspring of a covered animal that was confined in a cruel manner.  Cal. Health & Safety Code § 25900.  The statute defines "confined in a cruel manner" to include confining any animal in a manner that "prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely."  *Id*. at § 25901.  In a provision that explicitly does not take effect until after December 31, 2021, the law also

includes "confining a breeding pig with less than 24 square feet of usable floorspace per pig" within the definition of "confined in a cruel manner." *Id*. Plaintiff seeks injunctive and declaratory relief based on its assertion that Proposition 12, including its enforcement provisions, violates the Due Process Clause, the Privileges and Immunities Clause, and the Commerce Clause, and is preempted by Packers and Stockyards Act, 7 U.S.C. § 193 *et seq*. (Doc. No. 23 (first amended complaint ("FAC")).)

As mentioned below, commerce clause challenges to Proposition 12 previously have been presented to other courts where related injunctive relief motions have been resolved and rejected. The present lawsuit advances similar commerce clause arguments once again and adds several new claims. Among other things, plaintiff now alleges that certain aspects of Proposition 12 are unconstitutionally vague, particularly given that implementing regulations related to the law—which Proposition 12 directed relevant state agencies to promulgate by September 1, 2019—have yet to be finalized. *See* Cal. Health & Safety Code § 25993(a). For example, plaintiff alleges that "it remains vague [ ] to whether a single violation is based on each sale, each pound or piece of meat, or each breeding pig." (FAC ¶ 49.) Plaintiff elsewhere argues that while Proposition 12 prohibits the sale of non-compliant whole pork meat by anyone "engaged in" the sale of meat within California, California Health & Safety Code §§ 25990(b)(2), 25991, the term "engaged in" is not defined and therefore "requires the entire pork supply chain to speculate as to its meaning while concurrently risking criminal prosecution." (Doc. No. 24-1 at 18.) Finally, plaintiffs assert that the "turn around" requirements and "square footage" requirements "are only mentioned in one phrasing in the statute, providing no further definition of what these terms even mean," which plaintiff asserts is problematic because "[t]he practical implication of how to implement these two sets of requirements is complex." (*Id*.)

The complaint in this action was originally filed in Fresno County Superior Court on November 9, 2021; defendants removed the matter to this federal court on November 16, 2021. (Doc. No. 1.) On November 22, 2021, plaintiff filed an overlength motion for preliminary injunction. (*See* Doc. Nos. 15–15-6.) Plaintiff urged the court to accept the overlength brief (*see* Doc. No. 14); to set a hearing on the matter for December 17, 2021; and to rule on their motion

for preliminary injunction before January 1, 2022, the effective date of some of Proposition 12's provisions.[1] (*See* Doc. No. 15.) In an order issued November 24, 2021, the undersigned struck the overlength brief, granted a more modest page expansion, required the re-filing of the motion, and declined to expedite the matter in the manner requested by plaintiff. (Doc. No. 21.) The court noted that "[c]onsidering the ongoing and well-documented judicial resource emergency in this court . . . plaintiff's request would be nearly impossible to accommodate." (*Id*. at 2.) The thrust of the court's ruling was premised upon plaintiff's failure to bring the matter before this court with the urgency required to merit expedited treatment under the circumstances:

> Even if the court could muster the resources to address the pending motion on the expedited timeline suggested by plaintiff, the undersigned declines to urgently prioritize this matter vis-à-vis the numerous other civil litigants who have been waiting many months (if not years) for rulings on important matters. It is undisputed that Proposition 12 passed in November 2018. (*See* Doc. No. 15-1 at 12.) Some of the provisions challenged here went into effect later that year. (*Id*.) Certain other aspects of Proposition 12 are set to go into effect on January 1, 2022. (*Id*.) Since Proposition 12's passage, starting in 2019, at least two other groups of similarly-situated plaintiffs have tried unsuccessfully to block the same aspects of Proposition 12 challenged by plaintiff here from going into effect. *See N. Am. Meat Institute v. Becerra*, 420 F. Supp. 3d 1014 (C.D. Cal. 2019), *aff'd*, 825 Fed. Appx. 518 (9th Cir. 2020); *Nat'l Pork Producers Council v. Ross*, 456 F. Supp. 3d 1201, 1206 (S.D. Cal. 2020), *aff'd,* 6 F.4th 1021 (9th Cir. 2021).
>
> Moreover, it has come to the court's attention that plaintiff initially filed a largely identical suit to this one in state court in Iowa in May 2021. *See Iowa Pork Producers Ass'n et al. v. Bonta*, No. 3:21-cv-3018 (N.D. Iowa), ECF No. 1-4 (Complaint). That case was removed to the U.S. District Court for the Northern District of Iowa and subsequently dismissed for lack of personal jurisdiction in late August 2021. *Id*. at ECF No. 67. Then, seemingly inexplicably, plaintiff waited approximately <u>ten</u> weeks to file the instant complaint in Fresno County Superior Court on November 9, 2021. The Fresno County complaint was subsequently (and unsurprisingly) removed to this federal court seven days later, a mere six weeks before the square footage requirements of Proposition 12 are set to take effect. Were this motion to proceed according to the December 17, 2021 hearing date proposed by plaintiff, this highly complex matter would become ripe a mere 21 days before December 31, 2021, a period that encompasses several holiday-related court closures. This timing renders the pending

---

[1] Plaintiff concedes that the turnaround requirements of the law went into effect on December 19, 2018. (FAC, ¶ 37.) Plaintiff alleges that on that date, "[i]t immediately became a crime for the Plaintiff's members –and the out-of-state pork industry to sell into California." (*Id*., ¶ 38.)

3

> motion effectively one for a temporary restraining order insofar as it demands highly expedited treatment. The undersigned therefore looks to this court's local rule regarding temporary restraining orders, which provides:
>
>> Timing of Motion. In considering a motion for a temporary restraining order, the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order. Should the Court find that the applicant unduly delayed in seeking injunctive relief, the Court may conclude that the delay constitutes laches or contradicts the applicant's allegations of irreparable injury and may deny the motion solely on either ground.
>
> Local Rule 231(b).
>
> The court finds that the present record fails to explain why this case could not have been presented to the court in a far timelier manner. The "urgency" presented here is largely of plaintiff's own making. Therefore, the court will not expedite consideration of the pending motion in the manner suggested by plaintiff. The court recognizes that—at least according to plaintiff—the financial implications of Proposition 12 going into effect may be enormous, but that does not change the procedural history of this case.

(*Id*. at 2–4 (footnotes omitted).) In short, the undersigned refused to effectively treat plaintiff's motion for a preliminary injunction as one for temporary injunctive relief. In the same order, the undersigned also indicated that it was "considering the issuance of an order to show cause why this case should not be transferred to the U.S. District Court for the Central District of California, where the substantially related *North American Meat Institute v. Becerra*, No. 2:19-cv-08569-CAS (FFMx) case remains open," but did not indicate an intended timeframe for its consideration of that issue. (*Id*. at 5.)

More than three weeks later, on December 16, 2021, plaintiff filed a first amended complaint along with a revised motion for preliminary injunction, setting that motion for hearing before this court on January 27, 2022. (Doc. Nos. 23, 24.) Simultaneously, plaintiff filed an *ex parte* application for an order transferring venue to the Central District of California, invoking 28 U.S.C. § 1406(a). (Doc. No. 25.) Plaintiff indicated therein that defendants were taking no position on the question of transfer. (*Id*. at 3.) Plaintiff also appears not to have fully internalized the undersigned's ruling that expedited treatment of this matter was not warranted given the

4

1 substantially self-inflicted delay in bringing this action before a federal court in California. For
2 example, plaintiff suggests that a delayed ruling on their motion to transfer will "invite more
3 unnecessary briefing and undue delay that will certainly surpass the January 1, 2022 deadline."
4 (Doc. No. 27 at 2.) To the extent that this language could be construed as a request for
5 reconsideration of this court's prior ruling (i.e., another demand for this court to facilitate a
6 situation in which the pending motion for preliminary injunction could be resolved by January 1,
7 2022), that request is denied for the reasons stated in this court's November 24, 2021 order.

8 The conclusion reached in the November 24, 2021 order is not undermined by more recent
9 events, including the December 3, 2021 release by California regulators of additional revisions to
10 the draft regulations intended to implement aspects of Proposition 12. (FAC, ¶ 58.) It is alleged
11 by plaintiff that the earliest date any revised proposed regulations will be effective and
12 enforceable is April 1, 2022. (*Id.*) As the court acknowledged in its November 24, 2021 order,
13 California regulators failed to promulgate implementing regulations by the September 1, 2019
14 deadline set forth in Proposition 12. (Doc. No. 21 at 3 n.1.) Plaintiff has been arguing since mid-
15 2021 when it filed suit in Iowa state court that California regulators would not promulgate
16 regulations in time for plaintiff's members to comply the January 1, 2022 effective date of
17 Proposition 12. (*See Iowa Pork Producers Ass'n v. Bonta*, 3:21-cv-03018-CJW-MAR (*N.D.*
18 *Iowa Case*), Doc. No. 1-4, ¶ 67 (alleging in May 20, 2021 filing that "[i]t is not commercially
19 feasible, or perhaps even possible, for Iowa pork farmers to comply with Proposition 12 by
20 January 1, 2022").) Therefore, the situation being presented to this court has been a matter of
21 "urgency" to plaintiffs for more than seven months now. Plaintiff also acknowledges that the
22 very structure of Proposition 12 did not permit *any* time to promulgate regulations before the
23 *December 19, 2018* effective date of the law's turn around requirements. (*See id.*, ¶ 64; FAC ¶
24 54.) Therefore, any claim by plaintiff premised upon California regulators' failure to clarify
25 allegedly vague aspects of the law's turn around requirements appears to have been ripe for
26 almost three years. All of this belies any attempt to now push in front of other litigants in this
27 court (or arguably in any other) to rush this matter to resolution.
28 /////

5

The court now turns to the application for an order to transfer. Plaintiff's invocation of 28 U.S.C. § 1406(a)[2] notwithstanding, the appropriate mechanism for a transfer of this nature is 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Although Congress drafted § 1404(a) in accordance with the doctrine of *forum non conveniens*, it was intended to be a revision to rather than a codification of the common law. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981). Thus, a § 1404(a) transfer is available "upon a lesser showing of inconvenience" than that required for a *forum non conveniens* dismissal. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

The burden is upon the moving party to show that transfer is appropriate. *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 499 (C.D. Cal. 1981), *aff'd*, 726 F.2d 1381, 1399 (9th Cir. 1984). Nonetheless, the district court has broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The Ninth Circuit has offered examples of factors that may be considered under § 1404(a): (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses and availability of compulsory process; (4) ease of access to the evidence; (5) feasibility of consolidation of other claims; (6) familiarity of each forum with the applicable law; (7) any local interest in the controversy; and (8) the relative court congestion and time to trial in each forum. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Jones,* 211 F.3d at 498–99.

/////

/////

---

[2] Title 28 U.S.C. § 1406(a) applies where a case has been venued in the "wrong division or district" and permits the district court to "dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought." That provision plainly does not apply to the present circumstances, as no one suggests that venue is *improper* in this court.

6

Here, there is no dispute that this case could have been brought in the U.S. District Court for the Central District of California. The FAC alleges California as a whole (as opposed to any location within the Eastern District of California in specific) is a "behemoth" consumer of pork, most of which is imported from outside the state, (*see* FAC, ¶¶ 4–5), and the Attorney General of California may be sued in any district where he maintains an office, including the Central District of California, *see* California Code of Civil Procedure § 401. To the extent that any of the other relevant factors are applicable here, they weigh in favor of transfer. Of utmost importance to the undersigned is the fact that the Central District is already familiar with many of the arguments raised in this case, as Judge Snyder has ruled on similar arguments in the relatively recent past, *see N. Am. Meat Inst. v. Becerra*, 420 F. Supp. 3d 1014 (C.D. Cal. 2019), *aff'd*, 825 Fed. Appx. 518 (9th Cir. 2020) (reviewing a commerce clause challenge to Proposition 12 in detail and finding that plaintiff had failed to raise any serious questions on the merits of those claims), in a case that remains open. Plaintiff's choice of forum also weighs in favor of transfer, since plaintiff is now requesting transfer to the Central District and defendants do not object thereto.

Plaintiff's declarants all appear to reside outside California, (*see* Doc. Nos. 24-2, 24-3, 24-4), so it is unlikely that they would be more inconvenienced by a forum in Los Angeles than they would be if this case was heard and decided in Fresno. Defendants have not identified any witnesses in this case, but counsel of record are located in Sacramento, San Francisco, and Los Angeles, so Los Angeles appears to be at least as convenient as Fresno. Finally, the court may also consider "the administrative difficulties flowing from court congestion" in the balance. *Decker*, 805 F.2d at 843 (quoting *Piper Aircraft*, 454 U.S. at 241 n. 6). Although the Central District of California is extremely busy and the judges of that court are burdened with a caseload far above the national average, as of the last statistical analysis published by the U.S. Courts, the per judge caseload in the Eastern district is more than twice as large as that in the Central District of California.[3] For all these reasons, the court concludes that transfer to the Central District of

---

[3] *See* Administrative Office of the U.S. Courts, U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2021), *available at*: https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/06/30-3 (last visited December 26, 2021).

California is appropriate.

Plaintiff's motion for preliminary injunction remains pending and set for hearing on January 27, 2021, subject to re-setting by the transferee court at its discretion.

## CONCLUSION

For the reasons set forth above,

(1) To the extent that plaintiff is requesting reconsideration of this court's refusal to expedite a hearing and ruling on their motion for preliminary injunction, that request is DENIED;

(2) The Clerk of Court is directed to transfer this case to the Central District of California and to communicate to the Clerk of that Court that it is the undersigned's opinion that this case should be directly assigned, if possible, to U.S. District Judge Christina A. Snyder given that Judge Snyder currently presides over a related case: 2:19-cv-08569-CAS-FFM.

IT IS SO ORDERED.

Dated: **December 27, 2021**

_Dale A. Drozd_
UNITED STATES DISTRICT JUDGE