Name Marnie A. Jensen (*pro hac vice*) HUSCH BLACKWELL LLP

Address _13330 California Street, Suite 200_

City, State, Zip __Omaha, NE 68154__

Phone __402-964-5000__

Fax __402-964-5050__

E-Mail __marnie.jensen@huschblackwell.com__

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

IOWA PORK PRODUCERS ASSOCIATION,

PLAINTIFF(S),

v.

ROB BONTA, et al.,

DEFENDANT(S).

CASE NUMBER:   2:21-cv-09940 CAS(AFM)

**PRELIMINARY INJUNCTION APPEAL
NOTICE OF APPEAL**

NOTICE IS HEREBY GIVEN that __Iowa Pork Producers Association__ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
   Denial of Motion for Preliminary
   Injunction/Granting Motion to Dismiss

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on ___2/28/22___. Entered on the docket in this action on ___3/2/22 [ECF 83 and 84]___.

A copy of said judgment or order is attached hereto.

___March 30, 2022___

Date

___/s/ Marnie A. Jensen___

Signature

☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

**Note:**   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

TRENTON H. NORRIS (SBN 164781)
PEG CAREW TOLEDO (SBN 181227)
WILLIS M. WAGNER (SBN 310900)
Arnold & Porter Kaye Scholer LLP
Three Embarcadero Center, 10th Floor
San Francisco, California 94111
Telephone: +1 415.471.3100
Facsimile: +1 415.471.3400
E-mail: Trent.Norris@arnoldporter.com
Peg.Toledo@arnoldporter.com
Will.Wagner@arnoldporter.com

EKSANDAR A. BEROUKHIM
(SBN 220722)
Arnold & Porter Kaye Scholer LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone: +1 213.243.4000
Facsimile: +1 213.243.4199
Email:
Alex.Beroukhim@arnoldporter.com

MARNIE A. JENSEN (*pro hac vice*)
RYANN A. GLENN (*pro hac vice*)
Husch Blackwell LLP
13330 California Street, Suite 200
Omaha, Nebraska 68154
Telephone: 402.964.5000
Facsimile: 402.964.5050
E-mail:
marnie.jensen@huschblackwell.com
ryann.glenn@huschblackwell.com

ELDON MCAFEE (*pro hac vice*)
JULIE VYSKOCIL(*pro hac vice*)
BRICK GENTRY, P.C.
6701 Westown Parkway, Suite 100
West Des Moines, Iowa 50266
Telephone: 515.271.5916
Facsimile: 515.274.1488
E-mail:
eldon.mcafee@brickgentrylaw.com
julie.vyskocil@brickgentrylaw.com

Attorneys for Plaintiff
IOWA PORK PRODUCERS ASSOCIATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IOWA PORK PRODUCERS ASSOCIATION,<br><br>          Plaintiff,<br><br>     v.<br><br>ROB BONTA, et al.,<br><br>          Defendants. | Case No.  2:21-cv-09940 CAS(AFM)<br><br><br>**REPRESENTATION STATEMENT**<br><br>Honorable Christina A. Snyder<br><br>Complaint filed: November 9, 2021 |

Pursuant to Ninth Circuit Rule 3-2, Plaintiff-Appellant Iowa Pork Producers Association ("Plaintiff" or "IPPA") submits as part of its Notice of Appeal the following statement of the parties to this action and their counsel in the District Court:

**Party:**          Iowa Pork Producers Association

**Alignment:**      Plaintiff-Appellant

**Counsel:**        Trenton H. Norris
                    Peg Toledo
                    Willis M. Wagner
                    Arnold & Porter Kaye Scholer LLP
                    Three Embarcadero Center, 10th Floor
                    San Francisco, CA 94111
                    415-471-3100
                    Trent.Norris@arnoldporter.com
                    Peg.Toledo@arnoldporter.com
                    Will.Wagner@arnoldporter.com

                    Eksandar A. Beroukhim
                    Arnold & Porter Kaye Scholer LLP
                    777 South Figueroa Street, 44th Floor
                    Los Angeles, CA 90017
                    213-243-4000
                    Alex.Beroukhim@arnoldporter.com

                    Marnie A. Jensen
                    Ryann A. Glenn
                    HUSCH BLACKWELL LLP
                    13330 California Street, Suite 200
                    Omaha, NE 68154
                    402-964-5000
                    marnie.jensen@huschblackwell.com
                    ryann.glenn@huschblackwell.com

                    Eldon L. McAfee
                    Julie L. Vyskocil
                    BRICK GENTRY, P.C.
                    6701 Westown Parkway, Suite 100
                    West Des Moines, IA 50266
                    515-271-5916

1

1  eldon.mcafee@brickgentrylaw.com
2  julie.vyskovil@brickgentrylaw.com

3  **Parties:**        Rob Bonta, in his official capacity as Attorney General of
4                      California
                       Karen Ross, in her official capacity as Secretary of the California
5                      Department of Food and Agriculture
6                      Tomás Aragón, in his official capacity as Director of the
                       California Department of Public Health
7

8  **Alignment:**      Defendants

9  **Counsel:**        Mark R. Beckington
10                     Sarah M. Barnes
                       Natasha Saggar Sheth
11                     Marla R. Weston
12                     Office of the Attorney General
                       1300 I Street, Suite 125
13                     Sacramento, CA 94244-2550
14                     916-210-7763
                       Mark.Beckington@doj.ca.gov
15                     Sarah.Barnes@doj.ca.gov
16                     Natasha.Sheth@doj.ca.gov
                       Marla.Weston@doj.ca.gov
17

18 **Parties:**        The Humane Society of the United States
                       Animal Legal Defense Fund
19                     Animal Equality
20                     The Humane League
                       Farm Sanctuary
21                     Compassion in World Farming USA
22                     Animal Outlook

23 **Alignment:**      Intervenor-Defendants
24

25 **Counsel:**        Bruce Wagman
                       RILEY SAFER HOLMES & CANCILA
26                     456 Montgomery Street, 16th Floor
                       San Francisco, CA 94104
27                     415-275-8540
28                     BWagman@rshc-law.com

2

1

Peter A. Brandt

2

Rebecca Cary
The Humane Society of the United States

3

1255 13rd Street, NW, Suite 450

4

Washington, DC 20037
202-676-2330

5

Pbrandt@humanesociety.org

6

Rcary@humanesociety.org

7

8

DATED:  March 30, 2022.

9

IOWA PORK PRODUCERS

10

ASSOCIATION, Plaintiff.

11

12

By: */s/ Marnie A. Jensen*
Trenton H. Norris (SBN 164781)

13

Peg Toledo (SBN 181227)
Willis M. Wagner (SBN 310900)

14

Three Embarcadero Center, 10th Floor
San Francisco, California 94111

15

Telephone: +1 415.471.3100
Facsimile: +1 415.471.3400

16

Trent.Norris@arnoldporter.com
Peg.Toledo@arnoldporter.com

17

Will.Wagner@arnoldporter.com

18

Eksandar A. Beroukhim
(SBN 220722)

19

Arnold & Porter Kaye Scholer LLP
777 South Figueroa Street, 44th Floor

20

Los Angeles, California 90017
Telephone: +1 213.243.4000

21

Facsimile: +1 213.243.4199

22

Alex.Beroukhim@arnoldporter.com

23

and

24

Marnie A. Jensen (NE 22380)

25

(*pro hac vice*)
Ryann A. Glenn (NE 26160)

26

(*pro hac vice*)

27

HUSCH BLACKWELL LLP

28

13330 California Street, Suite 200

3

Omaha, NE 68154
Telephone: (402) 964-5000
Facsimile: (402) 964-5050
marnie.jensen@huschblackwell.com
ryann.glenn@huschblackwell.com

and

Eldon L. McAfee (AT0004987)
(*pro hac vice*)
Julie L. Vyskocil (AT0009711)
(*pro hac vice*)
BRICK GENTRY, P.C.
6701 Westown Parkway, Suite 100
West Des Moines, IA 50266
Telephone: (515) 271-5916
Facsimile: (515) 274-1488
eldon.mcafee@brickgentrylaw.com
julie.vyskovil@brickgentrylaw.com

*Attorneys for Iowa Pork Producers*
*Association*

4

# CERTIFICATE OF SERVICE

Case Name: **_Iowa Pork Producers v. Rob_**
**_Bonta, et al._**          Case No.  **2:21-cv-09940-CAS-AFM**

I hereby certify that on <u>March 30, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

### REPRESENTATION STATEMENT

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 30, 2022,</u> at Omaha, Nebraska.

|              |              |
|--------------|--------------|
| Marnie A. Jensen | _/s/ Marnie A. Jensen_ |
| Declarant | Signature |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Sherri Kleeger | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:
Willis Wagner                                      Marla Weston
Eldon McAfee                                     Benjamin Glickman
Marnie Jensen

**Proceedings:**      DEFENDANTS' MOTION TO DISMISS (Dkt. 51, filed on
JANUARY 3, 2022)

## I.    INTRODUCTION

On November 9, 2021, plaintiff Iowa Pork Producers Association ("Iowa Pork") filed suit in Fresno Superior Court against Rob Bonta, the Attorney General of California, Karen Ross, the Secretary of the California Department of Food and Agriculture ("CDFA"), and Tomas Aragon, the Director of the California Department of Public Health ("CDPH") (collectively, "defendants"). Dkt. 1. Iowa Pork challenges the constitutionality and seeks to prevent the enforcement of California Health & Safety Code § 25990, et seq., which California voters amended through the passage of Proposition 12 on November 6, 2018 ("Proposition 12"). Proposition 12 prohibits the sale of "whole pork meat" from a "covered animal" that was confined in a "cruel manner," or is the immediate offspring of a covered animal that was confined in a cruel manner. Cal. Health & Safety Code § 25900. The statute defines "confined in a cruel manner" to include confining any covered animal in a manner that "prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely," or "[a]fter December 31, 2021, confining a breeding pig with less than 24 square feet of useable floorspace per pig." Id. at § 25901.

On November 16, 2021, defendants removed the case to the United States District Court for the Eastern District of California. Dkt. 1. On December 16, 2021, plaintiff filed the operative first amended complaint. Dkt. 23 ("FAC"). Plaintiff's FAC asserts claims for: (1) violation of the Due Process Clause (facial and applied challenge); (2)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

violation of the Due Process Clause for failure to provide notice of the compliance requirements to those subject to Proposition 12 by September 1, 2019; (3) violation of the Privileges and Immunities Clause; (4) preemption by the Packers and Stockyards Act under the Supremacy Clause; (5) violation of the dormant Commerce Clause; and (6) declaratory relief pursuant to Cal. Code of Civ. P. § 1060.  FAC ¶¶ 125-230.

On December 16, 2021, plaintiff filed a motion for a preliminary injunction and alternative motion for a temporary restraining order.  Dkt. 24-1 ("PI Mot.").  On December 27, 2021, the U.S. District Court for the Eastern District of California, the Hon. Dale A. Drozd presiding, issued an order granting plaintiff's request to transfer the case to the U.S. District Court for the Central District of California.  Dkt. 28.  On December 28, 2021, the case was assigned to this Court, given that it presides over the related case North American Meat Institute v. Xavier Becerra et al, Case No. 2:19-cv-08569-CAS-FFM.  Dkt. 39.

On January 3, 2022, defendants filed a motion to dismiss the first amended complaint.  Dkt. 51 ("MTD").  On January 4, 2022, the Court set the hearings on plaintiff's motion for a preliminary injunction and defendants' motion to dismiss for February 28, 2022.  Dkt. 56.  On January 31, 2022, plaintiff filed an opposition to defendants' motion to dismiss.  Dkt. 70 ("Opp.").  On February 14, 2022, defendants filed a reply.  Dkt. 78 ("Reply").

On February 28, 2022, the Court held a hearing.[1]  Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

### A.   California Voters Enact Proposition 2 (2008)

In the November 2008 election, California voters passed Proposition 2, a ballot initiative intended to "prohibit the cruel confinement of farm animals."  FAC ¶ 6.  See Cal. Prop. 2 at § 2, as approved by voters (Gen. Elec. Nov. 4, 2008).  Proposition 2 added §§ 25990-25994 to the California Health and Safety Code, and took effect on January 1, 2015.  See Cal. Health & Safety Code §§ 25990-25994.  The enacted provisions prohibit California farmers from tethering or confining pregnant pigs, veal calves, and egg-laying

---

[1] At oral argument, council for plaintiff submitted on the Court's tentative order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                           'O'

| Case No. | 2:21-cv-09940-CAS (AFMx) | | Date | February 28, 2022 |
|----------|--------------------------|---|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | | |

hens in a way that prevented them from lying down, standing up, fully extending their limbs, or turning around freely. Id. at §§ 25990, 25991(b). Out-of-state pork producers were not subject to these requirements. Id. at § 25990(a).

Proposition 2 gave California producers over six years to comply with these confinement requirements, with an effective date of January 1, 2015. See id. at § 25990.

### B.    California Enacts Assembly Bill 1437 (2010)

The California legislature subsequently enacted Assembly Bill 1437 ("AB 1437") in 2010. FAC ¶ 65. AB 1437 added §§ 25995-97 to the Health and Safety Code. These provisions prohibit selling eggs in California that are produced by hens confined under conditions that do not meet the confinement requirements of Proposition 2. See Cal. Health & Safety Code §§ 25995-97. AB 1437 did not apply to calves raised for veal or to breeding pigs.

A coalition of states challenged AB 1437's sales ban pursuant to the Commerce Clause of the United States Constitution, but their action was dismissed on jurisdictional grounds. See Missouri ex rel. Koster v. Harris, 847 F.3d 646 (9th Cir. 2017). The states then attempted to petition the Supreme Court pursuant to its original jurisdiction over disputes between states, see U.S. Const., Art. III, § 2, but were denied. See Missouri v. California, No. 22-O-148 (filed U.S. Dec. 4, 2017).

### C.    California Enacts Proposition 12 (2018)

In the November 2018 election, California voters passed Proposition 12 to amend §§ 25990-93 of the California Health and Safety Code by adding § 25993.1. FAC ¶ 7. See Cal. Prop. 12 at § 1, as approved by voters (Gen. Elec. Nov. 6, 2018).

Proposition 12 prohibits the sale in California of "whole pork meat" that a seller "knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of the immediate offspring of a covered animal that was confined in a cruel manner." FAC ¶ 16-21; Cal. Health & Safety Code §§ 25990(b)(2). Confinement in a cruel manner refers to confining an animal in a manner that does not allow the animal to turn around freely, lie down, stand up, or fully extend their limbs (the "Turn Around Requirements"), and also, as of January 1, 2022, to confining a breeding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　　　　　　'O'

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

pig in a space with less than twenty-four square feet of usable floorspace per pig (the "Square Footage Requirements"). Id. at §§ 25990(a); 25991(e).

The prohibition deems that a sale occurs in California "where the buyer takes physical possession" of the meat at issue in California. Id. at § 25991(o). Any person who violates Proposition 12's sales prohibition is guilty of a misdemeanor punishable by a fine of up to $1,000 and up to 180 days imprisonment. Id. at § 25993(b). Moreover, violating Proposition 12 constitutes unfair competition, as defined by Cal. Bus. & Prof. Code § 17200. Cal. Health & Safety Code § 25993(b).

Whereas Proposition 2 allowed in-state producers six years to comply with the Turn Around Requirements, the Turn Around Requirements imposed on out-of-state producers by Proposition 12 went into effect on December 19, 2018, six weeks after it was passed. FAC ¶ 7.

According to the ballot language, Proposition 12 is intended "to prevent animal cruelty by phasing out extreme methods of farm animal confinement, which also threaten the health and safety of California consumers, and increase the risk of foodborne illness and associated negative fiscal impacts on the State of California." See Cal. Prop. 12 at § 1, as approved by voters (Gen. Elec. Nov. 6, 2018).

The State has yet to issue final regulations implementing Proposition 12 (the "Final Regulations") despite the statutory language stating that "[t]he Department of Food and Agriculture and the State Department of Public Health shall jointly promulgate rules and regulations for the implementation of this act by September 1, 2019." Id. at § 25993.[2]

On March 5, 2021, the CDFA issued FAQs that stated that pork meat not in compliance with the Square Footage Requirements, but already in inventory or in commerce by December 31, 2021, will remain legal to sell in California. See CDFA AHFSS Animal Care Program Prop 12 FAQ, (March 5, 2021), https://www.cdfa.ca.gov/AHFSS/pdfs/Prop_12_FAQ_March_2021.pdf ("Prop. 12 FAQs"). Plaintiff notes that the Prop. 12 FAQs do not provide any relief to pork

---

[2] On May 28, 2021, CDFA and CDPH published draft regulations, and on December 3, 2021, the CDFA published amended draft regulations. FAC ¶ 12. Accordingly, the regulations have been proposed and opened for public comment, but remain unfinalized.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

producers who are not in compliance with the Turn Around Requirements.  FAC ¶¶ 56-57.

### D.  The North American Meat Institute ("NAMI") Seeks to Enjoin Proposition 12 (2019)

On October 4, 2019, the North American Meat Institute, a national trade association of meat packers and processors, filed suit to challenge the constitutionality and prevent the enforcement of Proposition 12.  Their motion for a preliminary injunction was denied by this Court on November 22, 2019, and the denial was affirmed by the Ninth Circuit on October 15, 2020.  See N. Am. Meat Inst. v. Becerra, 420 F. Supp. 3d 1014, 1017 (C.D. Cal. 2019), aff'd, 825 F. App'x 518 (9th Cir. 2020).  The Supreme Court denied NAMI's petition for writ of certiorari on June 28, 2021.  See N. Am. Meat Inst. v. Bonta, 141 S. Ct. 2854 (2021).[3]

### E.  Plaintiff Files Suit, Alleging Constitutional Violations (2021)

Plaintiff filed suit challenging the constitutionality of Proposition 12, and seeking injunctive and declaratory relief, on November 9, 2021.  Dkt. 1.  Plaintiff is a trade association that represents Iowa pork producers.  FAC ¶ 26.  Iowa is the leading pork producing state in the United States, and is also the leading state for pork exports.  FAC ¶¶ 3-4.[4]  Plaintiff contends that the economic impact of Proposition 12 will primarily fall on out-of-state producers, and that California cannot produce enough pork to meet its own pork demand.  Id. ¶ 105.

Plaintiff's suit alleges that Proposition 12 is unconstitutionally vague, violates the dormant Commerce Clause, and threatens the nation's food supply.  FAC ¶¶ 34-111.  Moreover, plaintiff claims that because the vast majority of Iowa pork producers are not

---

[3] Likewise, in a separate case, the U.S. District Court for the Southern District of California granted a motion to dismiss a dormant Commerce Clause challenge to Proposition 12.  Nat'l Pork Producers Council v. Ross, 456 F. Supp. 3d 1201, 1210 (S.D. Cal. 2020), aff'd, 6 F.4th 1021 (9th Cir. 2021).

[4] In 2020, pork sales in Iowa totaled $40.8 billion, and nearly 150,000 jobs in Iowa are associated with the Iowa pork Industry.  McGonegle Decl. ¶ 8; id., Ex. A at 7.  There are about 24 million total hogs and pigs on Iowa farms.  Id. ¶ 24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

currently in compliance with Proposition 12, pork producers "face an imminent and irreparable Hobson's choice of: (1) being forced to harvest their breeding pigs in order to enter the California market, which makes up 13-15% of the national market, (2) ceasing operations, or (3) being forced to forgo one of the largest pork consumption markets in the nation at crippling expense." FAC ¶ 121.

On February 2, 2022, the California Superior Court for the County of Sacramento, in <u>California Hispanic Chamber of Commerce v. Ross</u>, Case No. 34-2021-80003765 (Cal. Sup. Ct.), concluded that "the promulgation of joint regulations is a condition precedent to the enforcement of the square-footage requirement governing sales of whole pork meat pursuant to Sections 25990(b)(2) and 25591(e)(3)." <u>See</u> Dkt. 79-1 ("Sup. Ct. Ord.") at 17. The case was brought by "a meat processing operation and business associations whose members sell whole pork meat in California," who argued, on state statutory grounds, that "without regulations fleshing out a written certification system supporting a good faith defense pursuant to Section 25993.1,[5] they should not be subject to penalties associated with the sale of nonconforming whole pork meat." <u>Id.</u> at 13. The court held that Sections 25990(b)(2) and 25591(e)(3), which pertain to the Square Footage Requirement as applied to "business owners and operators . . . knowingly engag[ing] in the sale within the state" of "[w]hole pork meat that the business owner or operator knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of immediate offspring of a covered animal who was confined in a cruel manner," would not be enforceable until 180 days after the Final Regulations are enacted. Sup. Ct. Ord. at 18; <u>see also</u> Cal. Health & Safety Code §§ 25990(b)(2), 25591(e)(3).

### III.   LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court

---

[5] Section 25993.1 states that "[i]t shall be a defense to any action to enforce subdivision (b) of Section 25990 that a business owner or operator relied in good faith upon a written certification by the supplier that the whole veal meat, whole pork meat, shell egg, or liquid eggs at issue was not derived from a covered animal who was confined in a cruel manner, or from the immediate offspring of a breeding pig who was confined in a cruel manner." Cal. Health & Safety Code § 25993.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (*e.g.*, facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                         **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

**IV.   DISCUSSION**

Defendants challenge each claim plaintiff brings, including claims (1) under the Due Process Clause, (2) under the Privileges and Immunities Clause, (3) for preemption under the Supremacy Clause, (4) under the dormant Commerce Clause, and (5) for declaratory relief, arguing that plaintiff cannot plausibly state a claim on which relief can be granted. The Court addresses each of defendants' argument in turn.

**A.   Due Process**

First, defendants argue that plaintiff cannot establish that Proposition 12 is unconstitutionally vague and violates the Due Process Clause on its face or as applied to plaintiff's members, and that a lack of implementing regulations does not constitutionally invalidate the law. MTD at 1.

**1.   Vagueness**

Defendants contend that plaintiff cannot state a claim that Proposition 12 is unconstitutionally vague under the Due Process Clause of the Fourth Amendment. MTD at 7. "The void-for-vagueness doctrine prohibits the government from imposing sanctions under a criminal law so vague that it fails to give ordinary people fair notice." Welch v. United States, 578 U.S. 120, 124 (2016) (internal citations and quotation marks omitted). As such, to satisfy due process, a penal statute must define the criminal offense to (1) "provide a person of ordinary intelligence fair notice of what is prohibited" and (2) not be "so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 533 U.S. 295, 304 (2008).

**a)   Facial Challenge**

Defendants assert that, by its own plain text, Proposition 12 gives fair notice to plaintiff, and therefore plaintiff cannot assert a facial Due Process Clause challenge that the statute is unconstitutionally vague. See Williams, 533 U.S. at 295. Defendants first

| Case No. | 2:21-cv-09940-CAS (AFMx) | | Date | February 28, 2022 |
|---|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | | |

rebut plaintiff's assertion that Cal. Health & Safety Code § 25990(b) is unconstitutionally vague because it "does not define what it means for an individual to be 'engaged in' a sale within" California. FAC ¶ 47. Defendants explain that by the statute's plain terms, a violation only occurs if one is engaged in the sale "within the state of California," and that "for purposes of this section, a sale shall be deemed to occur at the location where the buyer takes physical possession of an item covered by Section 25990." MTD at 8 (citing Cal. Health & Safety Code § 25991(o)). Defendants contend that this plain language unambiguously defines the term "engaged in a sale" to mean where the buyer take physical possession.

Defendants next argue that plaintiff cannot allege that "Proposition 12 does not define what it means for facilities to comply with" the applicable animal confinement requirements because the terms of animal confinement are clearly defined in the statute. MTD at 9; FAC ¶ 47. Citing to Proposition 12, defendants point to language which defines specifically what "fully extending the animal's limbs," "turning around freely," and "usable floorspace" mean. Cal. Health & Safety Code § 25991(e)(1); (s). MTD at 9-10. Defendants note that plaintiff does not explain how these straightforward and well-defined standards—which go so far as to provide how to calculate square footage of floorspace—are unclear to the ordinary person.

Further, defendants contend that Proposition 12 makes clear that moving a breeding pig to a compliant facility before a new gestational period will suffice for the production of compliant whole pork, even if the pig was kept in noncompliant conditions for a past gestational period. MTD at 10-11; FAC ¶ 48. Defendants emphasize the statutory language which states that "the meat of a covered animal . . . or . . . the meat of its immediate offspring who was confined in a cruel manner" cannot be compliant. Cal. Health & Safety Code § 25990(b). Defendants argue that the "immediate offspring" language clarifies that the confinement standards for the offspring of breeding pigs relate to a particular gestation period, and do not include confinement conditions for past gestational periods of the breeding pig. MTD at 11.

Plaintiff argues that it has alleged facts sufficient to state a claim that Proposition 12 is unconstitutionally vague on its face because Proposition 12 fails to place plaintiff's members on notice of how they can avoid criminal prospection and fails to give them sufficient time to comply. Opp. at 2. Plaintiff reiterates its allegations from its complaint, arguing that defendants do not direct the Court to any definition of "engaged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

in" a sale within the State of California, and that defendants' interpretation of what "engaged in a sale" means in its motion is insufficient to provide plaintiff with notice. Opp. at 4-5; FAC ¶¶ 42, 46.

Further, plaintiff argues that the Act fails to give adequate notice as to how pork producing facilities may comply with both the Turn Around Requirements and the Square Footage Requirements, leading to arbitrary enforcement. FAC ¶ 47; Opp. at 8. Plaintiff notes that in March 2021, the CDFA published regulatory guidance which stated that pork from pigs already born into inventory prior to January 1, 2022, can be sold after January 1, 2022. Plaintiff contends that because this guidance only concerns the Square Footage Requirements and is silent as to the Turn Around Requirements, it causes confusion among plaintiff's members and others regarding whether pork meat that was not in compliance with the Turn Around Requirements as of December 31, 2021, but was already in inventory or commerce, can be sold into California. Opp. at 9. Another area of vagueness plaintiff emphasizes is that the Act fails to provide adequate notice as to whether the confinement requirements apply to the life of the breeding pig or whether moving a breeding pig to a new confinement will suffice. Id.

In the context of a facial challenge on constitutional vagueness grounds, a plaintiff confronts a "heavy burden" in asserting its claim. Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998) ("[f]acial invalidation 'is, manifestly, strong medicine' that 'has been employed by the Court sparingly and only as a last resort'") (internal citations omitted).

The Court finds that the plain language of the statute is clear, and plaintiff does not plausibly state a facial Due Process Claim violation. Indeed, in the complaint, plaintiff appears to understand the plain meaning of Proposition 12's compliance requirements, explaining that it realizes that removing pigs from an enclosure is one means of providing more square footage. FAC ¶ 99. Further, the statute clearly defines "engaged in a sale" under Proposition 12 to mean "when a buyer takes physical possession" of a covered item in California. Cal. Health & Safety Code § 25990(b).

Plaintiff's argument that the statute is vague as to whether the offspring of a breeding pig that was not in compliance with the confinement requirements prior to January 1, 2022, but came into compliance on the aforementioned date, can be sold in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                        **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

California, is foreclosed by the California Department of Food and Agriculture's FAQ published on March 5, 2021. See Prop. 12 FAQs. The FAQ clarifies:

> 4. Will inventory of [] pork meat already in stock prior to January 1, 2022 need to be discarded if this covered product originated from animals not raised according the confinement standards of [] twenty-four square feet per breeding pig? No. The definition of "confined in a cruel manner" changes at the end of the day on December 31, 2021 for egg-laying hens and breeding pigs. Therefore, [] pork meat already in inventory or commerce on December 31, 2021 will still be legal to sell in California.

> 7. For covered pork product to be compliant after Jan 1, 2022, does the farm of origin have to house breeding pigs with a minimum of twenty-four square feet per pig at the time of breeding (February 2021)? Per the Proposition 12 statutes, the definition of "confined in a cruel manner" changes at the end of the day on December 31, 2021 for breeding pigs. Therefore, covered product and animals in inventory would be considered compliant if born before this effective date.

> Id.

Indeed, the FAQ clarifies that the definition of "confined in a cruel manner" changes on January 1, 2022, and as such if a breeding pig is moved to a space that complies with the Square Footage Requirements by January 1, 2022, any non-compliant conditions the breeding pig was subject to previously would not be considered "cruel" because the Square Footage Requirements had not yet gone into effect. Further, plaintiff's argument that the FAQs only provides clarity as to the Square Footage Requirements and not for the Turn Around Requirements is unsupported by the plain text of the statute. There should be no confusion among plaintiff's members regarding the Turn Around Requirements after January 1, 2022, because plaintiff's members were required to be in compliance with the Turn Around Requirements since 2018.

Moreover, in its *Amicus Curiae* brief filed in support of defendants, Niman Ranch, a network of independent family farmers who raise pigs, notes that it is fully compliant with Proposition 12. Dkt. 80 ("Niman *Amicus*"). Niman Ranch's statements that "compliance is straightforward and economically feasible," and that Niman Ranch and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

other "industry leaders have already implemented and satisfied compliance requirements" weakens plaintiff's vagueness argument. Id.

    b)   "As Applied" Challenge

Defendants contend that plaintiff's as applied Due Process Clause challenge that the statute is unconstitutionally vague fails because plaintiff makes no allegation that the law has ever been applied to plaintiff's members. MTD at 12-13. Because plaintiff does not provide details of any particular member's noncompliance, defendants argue these generalized allegations are insufficient to support an as applied challenge. Id.

Plaintiff argues that the same allegations that support plaintiff's facial due process challenge, also support plaintiff's as applied challenge. Opp. at 8. Specifically, plaintiff argues that as applied to its members' conduct in pig production, Proposition 12 is unconstitutionally vague because its members face a threat of imminent criminal prosecution. Opp. at 9. Plaintiff emphasizes that, contrary to defendants' contention, the fact that no one has been prosecuted within plaintiff's organization does not defeat its as applied challenge because Proposition 12 either forces its members to risk criminal prosecution if their pork is sold in California, forego one of the largest pork consumption markets in the nation, or harvest their breeding pigs in order to enter the California market. FAC ¶ 121-22; Opp. at 10.

Defendants reply that plaintiff's as applied vagueness challenge is flawed because plaintiff has alleged no facts showing "how the statute operates in practice against itself [] and identifies no particular [Iowa Pork] member to show the statute operates in practice against that member." Reply at 3. Further, defendants note that the as applied challenge fails to allege any member's "intent to engage in a course of conduct proscribed by the statute." Reply at 4.

In an as applied challenge, a statute is void for vagueness and thus unconstitutional if the statute "(1) does not define the conduct it prohibits with sufficient definiteness and (2) does not establish minimal guidelines to govern law enforcement." United States v. Shetler, 665 F.3d 1150, 1164 (9th Cir. 2011) (quoting United States v. Wyatt, 408 F.3d 1257, 1260 (9th Cir. 2005)).

The Court finds that plaintiff has not stated an as applied vagueness claim under the Due Process Clause. Plaintiff raises nearly identical arguments for its as applied

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | | Date | February 28, 2022 |
|----------|--------------------------|---|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | | |

challenge as it did for its facial Due Process challenge, and the Court has already found that plaintiff cannot state a plausible facial claim. Plaintiff's as applied challenge merely adds that "Proposition 12, as applied to its members' conduct in pig production is unconstitutionally vague." Opp. at 8-9. But plaintiff has not shown how the statute has been applied to its members.

Further, plaintiff's contention that the threat "of imminent criminal prosecution and penalties if their [members'] pork is sold into California" is insufficient to state an as applied challenged. Vill. Of Hoffman Ests. v. Flipside Hoffman Ests., Inc., 455 U.S. 489, 503 (1982) (stating theoretical possibility of enforcement is "of no due process significance unless the possibility ripens into a prosecution") (citation omitted). Plaintiff's citation to Babbit v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) is not to the contrary. In Babbit, the Supreme Court held that in pre-prosecution, a plaintiff must allege an intent to engage in the course of conduct proscribed by the statute and face a credible threat of prosecution to bring an as applied challenge. Here, there is no allegation that any of plaintiff's members are going to represent to their distributors that non-complaint meat is compliant. Even if plaintiff could show a real possibility of prosecution, plaintiff has not shown on the merits how the statute is impermissibly vague as to its members.

> 2.      Regulations

Defendants argue that plaintiff cannot state a Due Process Clause claim for vagueness based on CDFA's and CDPH's failure to promulgate Final Regulations by the statutory deadline. MTD at 13; FAC ¶¶ 156-167. Citing to Robles v. Domino's Pizza, LLC, defendants emphasize that the "Constitution only requires that [an individual] receive fair notice of its legal duties, not a blueprint for compliance with its statutory obligations." 913 F.3d 898, 908 (9th Cir. 2019).

Plaintiff contends that because the statute mandated that CDFA and CDPH promulgate Final Regulations by September 1, 2019, and it is now beyond January 1, 2022—the date on which the Square Footage Requirements went into effect—and only revised draft Proposed Regulations have been issued, individuals of ordinary intelligence have not been given a reasonable opportunity to know what conduct is prohibited so they can avoid prosecution. Opp. at 10; Cal. Health & Safety Code § 25993(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

In their reply, defendants note that plaintiff's members have had more than three years—since November 2018 when voters approved Proposition 12—to prepare for the Square Footage Requirements that took effect on January 1, 2022, providing them with clear notice of what producers like plaintiff's members must do to sell pork in California in 2022 and beyond.  Reply at 5.

The Court finds Robles v. Domino's Pizza, LLC instructive. 913 F.3d at 898.  In Robles, the Court held that where a statute is sufficiently clear, a lack of implementing regulations does not invalidate the statute on due process grounds.  Id.  "Moreover, the possibility that an agency might issue technical standards in the future does not create a due process problem."  Id. at 909, citing Reich v. Montana Sulphur & Chemical Co., 32 F.3d 440, 445 (9th Cir. 1994).  While the Court acknowledges that Proposition 12 required that DFA and the SDPH promulgate regulations by September 1, 2019, and the Final Regulations are not yet complete, the Court finds that the provisions that apply to plaintiff's members are clear from the statute's plain text.  Further, any potential vagueness issues from the statute's plain texts are clarified in CDFA's FAQ published on March 5, 2021.  Prop. 12 FAQs.  Plaintiff has failed to state facts to sufficiently allege that the lack of Final Regulations does not provide adequate notice to plaintiff.

**B.    Privileges and Immunities**

Second, defendants contend that the fact that California producers had more time to come into compliance with the Turn Around Requirements than out-of-state producers does not, as plaintiff alleges, "serve as a proxy for differential treatment and discriminate[] in practical effect against out-of-state producers." MTD at 14; FAC ¶ 180-81.  Significantly, defendants point out that plaintiff has failed to state a claim under the Privileges and Immunities Clause because the claim applies only to natural persons, and plaintiff is a legal entity.  MTD at 1.  U.S. Const. art. IV § 2 cl. 1.

Plaintiff argues that it does have standing to bring a Privileges and Immunities Clause claim on behalf of its members, and has alleged facts sufficient to show it has associational standing to challenge Proposition 12's constitutionality.  Opp. at 12.  Plaintiff argues that it has stated a claim sufficient to show that the statute treats non-residents differently than residents because in-state producers were provided with additional years to comply with the Turn Around Provisions, and by extension, were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                   **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title    | Iowa Pork Producers Association v. Rob Bonta et al. |

provided with an easy stepping-stone for compliance with the Square Footage Requirements.  Opp. at 13; FAC ¶ 178-80.

Defendants reply that even if some of plaintiff's members are natural persons that have associational standing under the Privileges and Immunity Clause, plaintiff cannot show that the statute discriminates in practical effect against out-of-state pork producers. Reply at 6.  Defendants point out that plaintiff does not allege that plaintiff's members have been prevented from selling their meat into California under Proposition 12.  Reply at 6-7.

Under the Privileges and Immunities Clause of the Fourth Amendment, "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  U.S. Const. art. IV § 2 cl. 1.  The Court notes that the Privileges and Immunities Clause applies to natural persons only, and not legal entities.  W. Turf Ass'n v. Greenberg, 204 U.S. 359, 363 (1907).

Plaintiff Iowa Pork is not a natural person but rather a self-declared "grassroots organization" whose members include "individuals, companies [and] other organizations with an interest in the pork industry."  Dkt. 70-1 ("McGonegle Decl.") ¶ 5.  Therefore, while Iowa Pork on its own does not have standing as a natural person to bring a Privileges and Immunities claim, because some of plaintiff's members are individuals, Iowa Pork may have associational standing to bring a Privileges and Immunities claim on their behalf.  See Council of Ins. Agents & Brokers v. Juarbe-Jimenez, 363 F. Supp. 2d 47, 55 (D.P.R. 2005) ("Associational [] standing permits organizations, in certain circumstances, to premise standing entirely upon the injuries suffered by their members.") (internal  citations omitted).

However, even if Iowa Pork can establish associational standing on behalf of its members who are individuals, it still cannot plausibly state a Privileges and Immunities claim because Proposition 12 applies equally to all pork meat sold within California, regardless of where it was produced, and therefore plaintiff cannot state a claim that Proposition 12 treats nonresidents and residents differently.  MTD at 2.  Because everyone is treated the same under Proposition 12, and its standards apply equally to all meat sold in California, California is not "discriminating against citizens of other states in favor of its own."  Nat'l Ass'n for the Advancement of Multijurisdictional Prac. v. Berch, 773 F.3d 1037, 1046 (9th Cir. 2014).  Further, the fact that in-state producers had more

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

"lead time" to implement the Turn Around Requirements based on a previous statute, does not change the fact that Proposition 12 on its face requires that both in-state and out-of-state producers comply with the Square Footage Requirement as of January 1, 2022.

**C.    Preemption**

Third, defendants argue that plaintiff cannot state a claim under the Supremacy Clause that Proposition 12 is preempted by the Packers and Stockyards Act, 7 U.S.C. §§ 181-229.  MTD at 2; U.S. Const. art. VI, cl. 2.  "Conflict preemption arises when [1] compliance with both federal and state regulations is a physical impossibility, or [2] when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  McClellan v. I-Flow Corp., 776 F.3d 1035, 1039 (9th Cir. 2015) (citing Hillsborough Cty., Fla. v. Automated Med. Lab'ys, Inc., 471 U.S. 707, 713) (1985) (internal quotation marks omitted).

Defendants contend that plaintiff misapprehends the Packers and Stockyards Act's purpose and scope, and plaintiff cannot not plausibly allege that it is impossible to comply with both laws or that Proposition 12 creates hurdles to comply with the federal law.  MTD at 2.  The Packers and Stockyards Act states, in relevant part:

"It shall be unlawful for any packer or swine contractor with respect to livestock, meats, meat food products, or livestock products in unmanufactured form, or for any live poultry dealer with respect to live poultry, to: . . . (b) Make or give any undue or unreasonable preference or advantage to any particular person or locality in any respect, or subject any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect[.]"

7 U.S.C. § 192(b).

Defendants argue that plaintiff's claim that Proposition 12 disadvantages "out-of-state pork producers who have not had as much time to come into compliance with the Turn Around Requirements, and now, the Square Footage Requirements" fails because it is not impossible for plaintiff to comply with both the Packers and Stockyards Act and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

Proposition 12.  FAC ¶ 197; MTD at 16.[6]  Defendants cite to the plain text of the proposition, noting that wholesalers are not required to favor in-state pork producers because Proposition 12 applies equally to all meat sold within California, whether produced in or out of state.  Cal. Health & Safety Code § 25990(b); MTD at 17.  Further, defendants contend that Proposition 12 does not create an obstacle to comply with federal law because the Packers and Stockyards Act forbids packers from engaging in "unfair, discriminatory, or deceptive practices in [] commerce," and complying with Proposition 12 does not require any unfair or discriminatory practices.  See Stafford v. Wallace, 258 U.S. 495, 514-15 (1922); MTD 17-18.

Plaintiff argues that it has sufficiently alleged that Proposition 12 is preempted by federal law because the Packers and Stockyards Act prohibits any packer from subjecting any particular locality to a "disadvantage" in the sale of meat, and Proposition 12 requires packers "to favor in-state localities and to disadvantage out-of-state localities who have not had as much time to come into compliance."  Opp. 14-15; FAC ¶ 197-98.  Plaintiff alleges that wholesalers will favor and purchase from in-state producers because in-state producers were given six years to comply with the Turn Around Requirements, and therefore wholesalers will buy from in-state producers so that they do not risk non-compliance from out-of-state producers who had less time to implement the requirements.  Opp. at 15-16.

When evaluating whether federal law has preempted a state law, a court must "(1) look to the purpose of Congress as the ultimate touchstone, while also (2) starting with the assumption that the historic police powers of the States were not to be superseded unless that was the clear and manifest purpose of Congress."  McClellan, 776 F.3d at 1039 (citing Wyeth v. Levine, 555 U.S. 555, 565 (2009)) (internal quotations omitted).

---

[6] Defendants also emphasize that plaintiff does not have standing to bring a Supremacy Clause claim because neither plaintiff nor its members are wholesalers, and plaintiff's claim rests on the assertion that "it is impossible for a wholesaler to comply with both Proposition 12 and the Packers and Stockyards Act."  FAC ¶ 198; MTD at 16. Defendants contend that plaintiff has not met the prudential requirements to have standing to bring a preemption claim because plaintiff has not alleged that its members are wholesalers or packers that are governed by the Packers and Stockyard Act.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL           'O'

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

The Packers and Stockyards Act states, with regard to preemption:

No requirement of any State or territory of the United States, or any subdivision thereof, or the District of Columbia, with respect to bonding of packers or prompt payment by packers for livestock purchases may be enforced upon any packer operating in compliance with the bonding provisions under Section 204 of this title, and prompt payment provisions of Section 228b of this title, respectively: Provided, this section shall not preclude a State from enforcing a requirement, with respect to payment for livestock purchased by a packer at a stockyard subject to this chapter, which is not in conflict with this chapter or regulations thereunder: Provided further, that this section *shall not preclude a State from enforcing State law or regulations* with respect to any packer not subject to this chapter or section 204 of this title.[7]
!

7 U.S.C. § 228(c) (emphasis added). See also De Vries v. Sig Ellingson & Co., 100 F. Supp. 781, 786 (D. Minn. 1951) (discussing the Packers and Stockyards Act and stating that "obviously Congress had no intention of regulating the entire business of the livestock and meat industry").

The statutory language implies that Congress did not intend for the Packers and Stockyards Act to preempt the field, and intended that the statute only preempt state laws in narrow circumstances when states were imposing requirements on the "bonding of packers," which Proposition 12 does not do. Id. Moreover, animal welfare and the health and safety of citizens, which are at issue here, have long been recognized as part of the historic police power of the states. See Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra (Éleveurs II), 870 F.3d 1140, 1146 (9th Cir. 2017) ("[T]he historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."). Moreover, plaintiff has not alleged any facts that show that Proposition 12 stands in the way of the execution of the Packers and

---

[7] 7 U.S.C. § 204 states that "the Secretary may require reasonable bonds from every mark agency [][and] every packer [] in connection with its livestock purchasing operations," and is not relevant to Proposition 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

Stockyards Act. <u>McClellan</u>, 776 F.3d at 1039. Accordingly, the Court finds that plaintiff has failed to state a claim alleging preemption by the federal Packers and Stockyards Act.

### D. Dormant Commerce Clause

Fourth, defendants argue that plaintiff's dormant Commerce Clause claims fail because plaintiff has not plausibly alleged that Proposition 12 is discriminatory in its purpose and effect, that it regulates extraterritorially, or that it substantially burdens interstate commerce. FAC ¶ 205-219.

The Constitution extends to Congress the power to "regulate Commerce . . . among the several states." U.S. Const., Art. I, § 8, cl. 3. "Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." <u>Nat'l Ass'n of Optometrists & Opticians v. Harris</u>, 682 F.3d 1144, 1147 (9th Cir. 2012) ("<u>Optometrists II</u>") (quoting <u>South–Central Timber Dev., Inc. v. Wunnicke</u>, 467 U.S. 82, 87 (1984)). "This limitation on the states to regulate commerce is 'known as the dormant Commerce Clause.'" <u>Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris</u>, 729 F.3d 937, 947 (9th Cir. 2013) (quoting <u>Optometrists II</u>, 682 F.3d at 1148). "The primary purpose of the dormant Commerce Clause is to prohibit 'statutes that discriminate against interstate commerce' by providing benefits to 'in-state economic interests' while 'burdening out-of-state competitors.'" <u>Id.</u> at 947 (quoting <u>CTS Corp. v. Dynamics Corp. of Am.</u>, 481 U.S. 69, 87 (1987) and <u>Dep't of Revenue v. Davis</u>, 553 U.S. 328, 337 (2008)).

"The Supreme Court has adopted a 'two-tiered approach to analyzing state economic regulation under the Commerce Clause.'" <u>Eleveurs</u>, 729 F.3d at 948 (quoting <u>Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.</u>, 476 U.S. 573, 578–79 (1986)). On the one hand, state regulations that (1) "discriminate against interstate commerce" or (2) "directly regulat[e] extra-territorial conduct" are generally "struck down . . . without further inquiry." <u>Id.</u> at 948-49 (quoting <u>Brown-Forman</u>); <u>see also</u> <u>Dakota v. Wayfair, Inc.</u>, 138 S. Ct. 2080, 2091 (2018) (explaining that such laws "face a virtually *per se* rule of invalidity"). However, state regulations that (3) "regulate even-handedly to effectuate a legitimate local public interest . . . will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

benefits." <u>Wayfair, Inc.</u>, 138 S. Ct. at 2091 (quoting <u>Pike v. Bruce Church, Inc.</u>, 397 U.S. 137 (1970)); <u>see</u> also <u>Energy & Env't Legal Inst. v. Epel</u>, 793 F.3d 1169, 1171 (10th Cir. 2015) (Gorsuch, J.) (explaining that "dormant commerce clause cases are said to come in [these] three varieties").

       1.   <u>Discrimination in Purpose and Effect</u>

Defendants argue that plaintiff does not, and cannot, plausibly allege that Proposition 12 is discriminatory on its face. MTD at 19-20. Discrimination against out-of-state commerce "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." <u>Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.</u>, 511 U.S. 93, 99 (1994). "The party challenging a regulation" on this basis "bears the burden of establishing that a challenged statute has a discriminatory purpose or effect under the Commerce Clause." <u>Int'l Franchise Ass'n, Inc. v. City of Seattle</u>, 803 F.3d 389, 400 (9th Cir. 2015) (internal citation and marks omitted).

Because the prohibition on the sale of pork meat from an animal confined in a cruel manner applies to any "business owner or operator" selling "within the state," and makes no distinction between in-state and out-of-state business owners or operators, defendants contend Proposition 12 is not discriminatory on its face. MTD at 20.

As for discriminatory purpose, defendants argue that plaintiff inaccurately alleges that Proposition 12's sole purpose is to avoid negative fiscal impacts to the State of California. FAC ¶ 211; MTD at 20. Defendants point to the language of Proposition 12 which states: "[t]he purpose of this act is to prevent animal cruelty by phasing out extreme methods of farm animal confinement, which also threaten the health and safety of California consumers, and increase the risk of foodborne illness and associated negative fiscal impacts on the State of California." Prop. 12, § 2, as approved by voters, Gen. Elec. (Nov. 6, 2018).

As for discriminatory effect, defendants contend that plaintiff cannot plausibly allege that Proposition 12 discriminates against out-of-state producers on the grounds that in-state pork producers had more time to comply with the Turn Around Requirements than out-of-state producers. FAC ¶¶ 207-208; MTD at 21. Defendants emphasize that Proposition 12 merely applies the same standards to all pork sales in California, and because the Constitution does not require a state to give preferential treatment to out-of-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL  'O'

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

state entities that sell their products in state, plaintiff cannot allege the statute discriminates against out-of-state entities.  MTD at 21.

Plaintiff contends it has alleged that Proposition 12 is facially discriminatory in its purpose and effect.  Opp. at 17-18.  Plaintiff argues that, even if only in part, the purpose of the statute is still to prevent "negative fiscal impacts on the State of California," which discriminates against out-of-state commerce.  Id.  Plaintiff cites to the regulatory text which states: "[i]n-state farmers will find it more costly to compete with farms outside of the state when selling . . . whole pork meat to an out-of-state buyer compared to local farms located in states that do not have the same animal confinement standards as described in the Act."  FAC ¶ 68; Opp. at 18.

In support of its argument, plaintiff cites to this Court's recent decision in N. Am. Meat Inst. v. Becerra, 420 F. Supp 3d 1014, 1028 n. 7 (C.D. Cal. 2019).  Therein, the Court stated:

[B]ecause aspects of Proposition 12 that apply pre-existing provisions of Proposition 2 to out-of-state producers *may* give those out-of-state producers less lead time for compliance than Proposition 2 gave in-state producers, plaintiffs *could* have an arguable basis to claim that Proposition 12 discriminates against out-of-state commerce. However, as discussed below, the Court concludes that this argument is premature prior to the release of the relevant implementing regulations.

Id.

First, the Court finds that plaintiff cannot plausibly state a claim that Proposition 12 is facially discriminatory, because it makes no distinction between in-state and out-of-state pork producers.  See Cal. Health & Safety Code § 25590 et seq.  "[A] statute that treat[s] all private companies exactly the same does not discriminate against interstate commerce. . . . This is so even when only out-of-state businesses are burdened because there are no comparable in-state businesses."  Eleveurs, 729 F.3d at 948 (internal quotation marks and citations omitted).  Further, with respect to discriminatory purpose, plaintiff has failed to plausibly allege that the purpose of Proposition 12, which the statute states is "to prevent animal cruelty by phasing out extreme methods of farm

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

animal confinement," was motivated by economic protectionism.  2018 Cal. Legis. Serv. Prop. 12, § 2.

Finally, with respect to discriminatory effect, the Court finds that plaintiff cannot plausibly allege that the fact that in-state producers had six years to comply with the Turn Around Requirements under Proposition 2, while out-of-state producers subject to Proposition 12 only had six weeks to comply, violates the dormant Commerce Clause.  In North American Meat Institute v. Becerra, et al. ("NAMI"), a previous case before this Court, a national trade association of meat packers and processors challenged, among other things, the constitutionality of Proposition 12, arguing that the statute discriminates against interstate commerce, and as such, violates the dormant Commerce Clause.  2020 WL 919153 (C.D. Cal. Feb. 24, 2020).  While the Court acknowledges that it previously held in defendants' motion to dismiss in NAMI that "[Plaintiff] *could* prove—and had alleged—an unconstitutional discriminatory effect based on . . . the potential difference in compliance 'lead time' given to in-state producers relative to out-of-state producers," upon further review of the facts of this case, the Court is not convinced that the "lead time" discrepancy is sufficient to allege a claim at this juncture.

In light of the fact that plaintiff has now had three years to comply with the "lead time" requirements, the Court finds plaintiff cannot plausibly state a claim that Proposition 12 has a discriminatory effect.  Id.  Plaintiff's discriminatory effect argument is that a different law, passed ten years earlier, treated in-state companies differently in that it gave them more time to comply with the Turn Around Requirements.  However, in Eleveurs, the Ninth Circuit found that "a statute that treats all private companies exactly the same" is not discriminatory "even when only out-of-state businesses are burdened because there are no comparable in-state businesses."  Eleveurs, 729 F.3d at 948.  Given that under Eleveurs there is no discriminatory burden on out-of-state businesses even where no comparably burdened in-state business exists, the Court finds and concludes that plaintiff cannot allege there is a discriminatory burden where in-state businesses are *already in compliance* with the same regulatory standards, even if in-state pork producers had more time to comply with Proposition 2 than out-of-state pork producers had to comply with Proposition 12.

Further, the Court finds the Ninth Circuit's recent decision in National Pork Producers Council v. Ross, which was decided a year after this Court's decision on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

defendants' motion to dismiss in <u>NAMI</u>, is informative.  6 F.4th, 1021, 1021 (9th Cir. 2021).  Plaintiff in that case, the National Pork Producers Council, an organization representing pork producers, challenged the constitutionality of Proposition 12, arguing that it violates the dormant Commerce Clause.  <u>Id.</u>  Affirming the district court's dismissal of the complaint, the Ninth Circuit found that plaintiff had not stated a claim under the dormant Commerce Clause.  <u>Id.</u> at 1032.  Significantly, the Ninth Circuit decision addressed only whether plaintiff's complaint violated the dormant Commerce Clause with respect to whether Proposition 12 regulated extraterritorial conduct and imposed a substantial burden on interstate commerce.  The Ninth Circuit did not address the question of whether Proposition 12 discriminates against interstate commerce in its effect.  However, when determining that Proposition 12 does not place an undue burden on interstate commerce, the Ninth Circuit states that "even a state law that imposes heavy burdens on some out-of-state sellers does not place an impermissible burden on interstate commerce. . . . Under our precedent, unless a state law facially discriminates against out-of-state activities, directly regulates transactions that are conducted entirely out of state, substantially impedes the flow of interstate commerce, or interferes with a national regime, a plaintiff's complaint is unlikely to survive a motion to dismiss."  <u>Id.</u> at 1033.  Applying the Ninth Circuit's narrow reading of the dormant Commerce Clause here, the Court finds that even if the "lead time" discrepancy may have, in the past, caused some burden on out-of-state pork producers, the discrepancy is not sufficiently discriminatory to enable plaintiff to state a claim under the dormant Commerce Clause.

In sum, the Court finds that plaintiff has not alleged facts sufficient to state a claim under the discriminatory effect prong of the dormant Commerce Clause based on the difference in "lead time" given to in-state and out-of-state producers with regard to the Turn Around Requirements.  Plaintiff filed this action almost three years after Proposition 12 was passed, and fails to provide any authority suggesting that the discriminatory burden of a particular law must be analyzed in connection with a previous statute.  Accordingly, the Court grants defendants' motion to dismiss on plaintiff's discriminatory effect claim.

2.      <u>Extraterritoriality</u>

Defendants further argue that plaintiff's claim that Proposition 12 unlawfully regulates "extraterritorial conduct wholly outside of California by placing onerous

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title    | Iowa Pork Producers Association v. Rob Bonta et al. | | |

certification, registration, and recordkeeping requirements on out-of-state producers" is foreclosed by Ninth Circuit precedent.  FAC ¶ 214-15; MTD at 21.

Any "statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature."  Healy v. Beer Institute, Inc., 491 U.S. 324, 336, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989).  "The critical inquiry is whether the practical effect of the regulation is to control the conduct beyond the boundaries of the State."  Healy, 491 U.S. at 336, 109 S.Ct. 2491 (quoting Brown, 476 U.S. at 579, 106 S.Ct. 2080).  "A statute that applies both to California entities and out-of-state entities does not target wholly extraterritorial activity."  National Pork Producers Council, 456 F. Supp. 3d at 1207.

Plaintiff argues that it has adequately pled that Proposition 12 regulates wholly extraterritorial conduct in violation of the dormant Commerce Clause.  Opp. at 20.

The Court finds that plaintiff's extraterritorial claim under the dormant Commerce Clause is barred by circuit precedent.  In National Pork Producers Council, the Ninth Circuit held that "state laws that regulate only conduct in the state, including the sale of products in the state, do not have impermissible extraterritorial effects."  Nat'l Pork Producers Council 6 F.4th at 1029.  The Ninth Circuit found that because Proposition 12 precluded the sale within California of products produced by pigs not raised in accordance with the requirements of the statute, regardless of where the pigs were raised, it did not regulate wholly out-of-state conduct and did "not have an impermissible extraterritorial effect."  Id.  As such, the Court finds that here plaintiff has failed to state a claim that Proposition 12 has an impermissible extraterritorial effect under the dormant Commerce Clause.

3.     Substantial Burden

Defendants argue that plaintiff cannot plausibly state a claim that the burdens imposed on interstate commerce by Proposition 12 outweigh any local benefits.  MTD at 22; FAC ¶ 214-19.

Plaintiff argues that it has alleged facts to show that Proposition 12's excessive burdens on interstate commerce exceed any purported benefit.  Opp. at 20.  Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

argues there are no local benefits because Proposition 12 "does not directly impact human health or welfare of California residents," whereas the burdens on interstate commerce are excessive and will have devasting effects on the national pork production market, including spikes in pork prices, and a shortage of pork available to California consumers. Opp. at 20.

Again, the Court finds that Nat'l Pork Producers Council v. Ross is controlling here. 6 F. 4th at 1021. In National Pork Producers Council, the Ninth Circuit affirmed defendants' motion to dismiss plaintiff's claim that Proposition 12 created a substantial burden on interstate commerce, holding that "even though the Council has plausibly alleged that Proposition 12 will have dramatic upstream effects and require pervasive changes to the pork production industry nationwide, it has not stated a violation of the dormant Commerce Clause under our existing precedent." Id. at 1034. Here, plaintiff has not offered any facts in its complaint that would lead this Court to reach a different outcome. As such, under the facts pled and under Ninth Circuit precedent, the Court grants defendant's motion to dismiss for failure to state a claim under the substantial burden prong of the dormant Commerce Clause.

### E.      Declaratory Relief

Fifth, defendants argue that because plaintiff has failed to plead any viable underlying claims, its claim for declaratory relief also fails. MTD at 2, 23; Davis v. Zimmerman, 2018 WL 1806101, at *6 (S.D. Cal. Apr. 17, 2018).

Plaintiff argues that defendants' entire basis for dismissing this claim is contingent on the Court's dismissal of other claims, and because each claim involves a justiciable question related to the parties' rights and obligations, the Court should not grant defendants' motion to dismiss plaintiff's declaratory relief claim. Opp. at 22-23.

Because the Court has found that plaintiff has failed to plead any viable underlying claims, the Court grants defendants' motion to dismiss plaintiff's declaratory relief claim. Davis, 2018 WL 1806101, at *6; see also Javaheri v. JPMorgan Chase Bank, N.A., 2012 WL 6140962, at *8 (C.D. Cal. Dec. 11, 2012) ("Declaratory [] relief do[es] not lie where all other claims have been dismissed.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al. | | |

### F.    Leave to Amend

Plaintiff states that if the Court grants defendants' motion to dismiss, the Court should grant plaintiff leave to amend. Opp. at 3. "Generally, the Ninth Circuit has a liberal policy favoring amendments, and thus, leave to amend should be freely granted." Winebarger v. Pennsylvania Higher Educ. Assistance Agency, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019); see also Fed. R. Civ. P. 15(a). Accordingly, the Court grants plaintiff's request for leave to amend its complaint.

## V.    CONCLUSION

In accordance with the foregoing, the Court:

1) **GRANTS** defendants' motion to dismiss as to plaintiff's Due Process Clause claims under the Fourteenth Amendment;

2) **GRANTS** defendants' motion to dismiss as to plaintiff's Privileges and Immunities Clause claims under Art. IV § 2;

3) **GRANTS** defendants' motion to dismiss as to plaintiff's Preemption Claim under the Supremacy Clause, Art. VI, Cl. 2;

4) **GRANTS** defendants' motion to dismiss as to plaintiff's dormant Commerce Clause under Art. 1 § 8; and

5) **GRANTS** defendants' motion to dismiss as to plaintiff's claim for declaratory relief under Cal. Code of Civ. P. § 1060.

The Court permits plaintiff 14 days' leave to amend.

IT IS SO ORDERED.

|  | 00 | : | 03 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                     **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

Present: The Honorable     CHRISTINA A. SNYDER

| Catherine Jeang | Sherri Kleeger | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
Willis Wagner
Eldon McAfee
Marnie Jensen

Attorneys Present for Defendants:
Marla Weston
Benjamin Glickman

Attorneys Present for Intervenors:
Rebecca Cary
Peter Brandt

**Proceedings:**     PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(Dkt. 24, filed on December 16, 2022)

DEFENDANT-INTERVENORS' MOTION TO INTERVENE (Dkt.
66, filed on January 31, 2022)

## I.    INTRODUCTION

On November 9, 2021, plaintiff Iowa Pork Producers Association ("IPPA") filed
suit in Fresno Superior Court against Rob Bonta, the Attorney General of California,
Karen Ross, the Secretary of the California Department of Food and Agriculture
("CDFA"), and Tomas Aragon, the Director of the California Department of Public
Health ("CDPH") (collectively, "defendants"). Dkt. 1. Plaintiff challenges the
constitutionality and seeks to prevent the enforcement of California Health & Safety
Code § 25990, et seq., which California voters amended through the passage of
Proposition 12 on November 6, 2018 ("Proposition 12"). Proposition 12 prohibits the
sale of "whole pork meat" from a "covered animal" that was confined in a "cruel
manner," or is the immediate offspring of a covered animal that was confined in a cruel
manner. Cal. Health & Safety Code § 25990(b). The statute defines "confined in a cruel
manner" to include confining any animal in a manner that "prevents the animal from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | | Date | February 28, 2022 |
|----------|--------------------------|---|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | | |

lying down, standing up, fully extending the animal's limbs, or turning around freely," and "confining a breeding pig with less than 24 square feet of usable floorspace per pig." Id. at § 25991(e).

On November 16, 2021, defendants removed the case to the U.S. District Court for the Eastern District of California. Id. On December 16, 2021, plaintiff filed the operative first amended complaint. Dkt. 23 ("FAC"). Plaintiff's FAC asserts claims for: (1) violation of the Due Process Clause (facial and applied challenge); (2) violation of the Due Process Clause for failure to provide notice of Proposition 12's compliance requirements by September 1, 2019; (3) violation of the Privileges and Immunities Clause; (4) preemption by Packers and Stockyards Act; (5) violation of the Commerce Clause; and (6) Declaratory Relief pursuant to Cal. Code of Civ. P. § 1060. FAC ¶¶ 125-230.

On December 16, 2021, plaintiff filed a motion for a preliminary injunction and alternative motion for temporary restraining order. Dkt. 24-1 ("PI Mot."). On December 27, 2021, the U.S. District Court for the Eastern District of California, the Hon. Dale A. Drozd presiding, issued an order granting plaintiff's request to transfer the case to the U.S. District Court for the Central District of California. Dkt. 28. On December 28, 2021, the case was assigned to this Court, which presides over the related case North American Meat Institute v. Xavier Becerra et al, Case No. 2:19-cv-08569-CAS-FFM. Dkt. 39.

On January 31, 2022, the Humane Society of the United States, the Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming USA, and Animal Outlook (collectively, "proposed intervenors") filed a motion to intervene in the case. Dkt. 66 ("MTI").

On January 31, 2022, defendants filed their opposition to plaintiff's motion for a preliminary injunction. Dkt. 69 ("PI Opp."). On February 7, 2022, plaintiff filed its opposition to the proposed intervenors' motion to intervene. Dkt. 71 ("MTI Opp.").

On February 7, 2022, Perdue Premium Meat Company, Inc. d/b/a Niman Ranch ("Niman Ranch") moved for leave to file an amicus memorandum in opposition to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

plaintiff's motion for a preliminary injunction.[1]  Dkt. 74.  On February 8, 2022, the Court granted Neman Ranch leave to file its amicus memorandum.  Dkt. 76.  On February 17, 2022, Niman Ranch filed its amicus memorandum.  Dkt. 80-2 ("NR Am. Memr.").

On February 14, 2022, proposed intervenors filed their reply in support of their motion to intervene.  Dkt. 77 ("MTI Reply").  Likewise, on February 14, 2022, plaintiff filed its reply in support of its motion for a preliminary injunction.  Dkt. 79 ("PI Reply").

The Court held a hearing on February 28, 2022.  Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

The following facts are taken from the FAC, the declarations and evidence submitted in support of the parties' PI briefing, the public record, and the submissions from amici.

### A.    California Voters Enact Proposition 2 (2008)

In the November 2008 election, California voters passed Proposition 2, a ballot initiative intended to "prohibit the cruel confinement of farm animals."  See Cal. Prop. 2 at § 2, as approved by voters (Gen. Elec. Nov. 4, 2008).  The initiative passed with the support of 63.42% of California voters.  See Cal. Sec'y State, Statement of Vote: 2008 General Election.  Proposition 2 added §§ 25990-25994 to the California Health and Safety Code, and took effect on January 1, 2015.  See Cal. Health & Safety Code §§ 25990-25994.  The enacted provisions prohibit California farmers from tethering or confining pregnant pigs, veal calves, and egg-laying hens in a way that prevented them from lying down, standing up, fully extending their limbs, or turning around freely.  Id. at

---

[1] Niman Ranch is a network of over 650 independent family hog farmers, a third of which are located in Iowa.  NR Am. Memr. at 6.  Niman Ranch's farms are fully compliant with Proposition 12, and Niman Ranch offers its amicus memorandum as "an alternative industry voice to demonstrate that compliance [with Proposition 12] is straightforward and economically feasible, and that certain industry leaders have already implemented and satisfied compliance requirements."  Id. at 6-7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                     **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

§§ 25990, 25991(b).  Out-of-state pork producers were not subject to these requirements.  Id. at § 25990(a).

Proposition 2 gave California producers six years to comply with its confinement requirements, with an effective date of January 1, 2015.  See id. at § 25990.

**B.     California Enacts Assembly Bill 1437 (2010)**

The California legislature subsequently enacted Assembly Bill 1437 ("AB 1437") in 2010.  AB 1437 added §§ 25995-97 to the Health and Safety Code.  These provisions prohibit selling eggs in California that are produced by hens confined under conditions that do not meet the confinement requirements of Proposition 2.  See Cal. Health & Safety Code §§ 25995-97.  AB 1437 did not apply to calves raised for veal or to breeding pigs.

A coalition of states challenged AB 1437's sales ban pursuant to the commerce clause of the United States Constitution, but their action was dismissed on jurisdictional grounds.  See Missouri ex rel. Koster v. Harris, 847 F.3d 646 (9th Cir. 2017).  The states then attempted to petition the Supreme Court pursuant to its original jurisdiction over disputes between states, see U.S. Const., Art. III, § 2, but were denied.  See Missouri v. California, No. 22-O-148 (filed U.S. Dec. 4, 2017).

**C.     California Enacts Proposition 12 (2018)**

In the November 2018 election, California voters passed Proposition 12 to amend §§ 25990-93 of the California Health and Safety Code by adding § 25993.1.  See Cal. Prop. 12 at § 1, as approved by voters (Gen. Elec. Nov. 6, 2018).  The initiative passed with 62.7% of the vote.  See Cal. Sec'y State, Statement of Vote: 2018 General Election.

As is relevant here, Proposition 12 prohibits the sale in California of "whole pork meat" that a seller "knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of the immediate offspring of a covered animal that was confined in a cruel manner."  Cal. Health & Safety Code §§ 25990(b)(2).  Confinement in a cruel manner refers to confining an animal in a manner that does not allow the animal to turn around freely, lie down, stand up, or fully extend their limbs (the "Turn Around Requirements"), and also, as of January 1, 2021, to confining a breeding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

pig in a space less than twenty-four square feet of usable floorspace per pig (the "Square Footage Requirements"). <u>Id.</u> at §§ 25990(a); 25991(e).

The prohibition deems that a sale occurs in California "where the buyer takes physical possession" of the meat at issue in California. <u>Id.</u> at § 25991(o). Any person who violates Proposition 12's sales prohibition is guilty of a misdemeanor punishable by a fine of up to $1,000 and up to 180 days imprisonment. <u>Id.</u> at § 25993(b). Moreover, violating Proposition 12 constitutes unfair competition, as defined by Cal. Bus. & Prof. Code § 17200. Cal. Health & Safety Code § 25993(b).

According to the ballot language, Proposition 12 is intended "to prevent animal cruelty by phasing out extreme methods of farm animal confinement, which also threaten the health and safety of California consumers, and increase the risk of foodborne illness and associated negative fiscal impacts on the State of California." <u>See</u> Cal. Prop. 12 at § 1, as approved by voters (Gen. Elec. Nov. 6, 2018). Whereas Proposition 2 allowed in-state producers six years to comply with the Turn Around Requirements, the Turn Around Requirements imposed on out-of-state producers by Proposition 12 went into effect on December 19, 2018, six weeks after it was passed. The CDFA has acknowledged that, as a result of Proposition 12, "[i]n-state farms will find it more costly to compete with farms outside of the State when selling shell eggs, liquid eggs, whole veal meat, and whole pork meat to an out-of-state buyer compared to farms located in states that do not have the same animal confinement standards." 2021 CA REG TEXT 584571 (NS)

The State has yet to issue final regulations implementing Proposition 12 (the "Final Regulations"), despite the statutory language stating that "[t]he Department of Food and Agriculture and the State Department of Public Health shall jointly promulgate rules and regulations for the implementation of this act by September 1, 2019." <u>Id.</u> at § 25993.[2]

---

[2] On May 28, 2021, CDFA and CDPH published draft regulations, and on December 3, 2021, the CDFA published amended draft regulations. Dkt. 69-1 ("Jones Decl.") ¶¶ 9, 12. Accordingly, implementing regulations have been proposed and opened for public comment, but remain unfinalized.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

On March 5, 2021, the CDFA issued FAQs that provided that pork meat that was not in compliance with the Square Footage Requirements, but was already in inventory or in commerce by December 31, 2021, will remain legal to sell in California. See CDFA AHFSS Animal Care Program Prop 12 FAQ, (March 5, 2021), https://www.cdfa.ca.gov/AHFSS/pdfs/Prop_12_FAQ_March_2021.pdf ("Prop. 12 FAQs"). Plaintiff notes that the Prop. 12 FAQs do not provide any relief to pork producers who are not in compliance with the Turn Around Requirements. PI Mot. at 12-13. Accordingly, plaintiff argues that the relief from the Square Footage Requirements afforded by the Prop. 12 FAQs is meaningless to plaintiff's members, who remain out of compliance with the Turn Around Requirements, but is valuable to in-state pork producers, who have been in compliance with the Turn Around Requirements since January 1, 2015. Id.

### D.    The North American Meat Institute ("NAMI") Seeks to Enjoin Proposition 12 (2019)

On October 4, 2019, the North American Meat Institute, a national trade association of meat packers and processors, filed suit to challenge the constitutionality and prevent the enforcement of Proposition 12. Their motion for a preliminary injunction was denied by this Court on November 22, 2019, and the denial was affirmed by the Ninth Circuit on October 15, 2020. See N. Am. Meat Inst. v. Becerra, 420 F. Supp. 3d 1014, 1017 (C.D. Cal. 2019), aff'd, 825 F. App'x 518 (9th Cir. 2020). The Supreme Court denied NAMI's petition for writ of certiorari on June 28, 2021. See N. Am. Meat Inst. v. Bonta, 141 S. Ct. 2854 (2021).[3]

### E.    Plaintiff Files Suit, Alleging Constitutional Violations (2021)

On November 9, 2021, plaintiff filed suit challenging the constitutionality of Proposition 12, and seeking injunctive and declaratory relief. Dkt. 1. Plaintiff is a trade association that represents Iowa pork producers. FAC ¶ 26. Iowa is the leading pork producing state in the United States, and is also the leading state for pork exports. Dkt.

---

[3] Likewise, in a separate case, the U.S. District Court for the Southern District of California granted a motion to dismiss a dormant Commerce Clause challenge to Proposition 12. Nat'l Pork Producers Council v. Ross, 456 F. Supp. 3d 1201, 1210 (S.D. Cal. 2020), aff'd, 6 F.4th 1021 (9th Cir. 2021).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

24-4 ("McGonegle Decl.") ¶¶ 6, 12.[4]  Plaintiff contends that the economic impact of Proposition 12 will primarily fall on out-of-state producers, and that California cannot produce enough pork to meet its own pork demand.  Id. ¶ 10.

Plaintiff's suit alleges that Proposition 12 is unconstitutionally vague, violates the dormant Commerce Clause, and threatens the nation's food supply.  FAC ¶¶ 34-111.  Moreover, plaintiff claims that because the vast majority of Iowa pork producers are not currently in compliance with Proposition 12, pork producers "would need to substantially alter their practices to come into compliance—either increasing the facility sizes, at a cost prohibitive to most farming operations, or substantially decreasing the number of pigs on their farms, which translates to crippling lost profits, waste and pork shortages."  PI Mot. at 14 (citing McGonegle Decl. ¶¶ 16-17).  However, Niman Ranch's amicus memorandum offers statements from many pork industry leaders wherein they claim that they are willing and able to comply with Proposition 12.  NR Am. Memr. at 21-23.  Accordingly, Niman Ranch contends that "[plaintiff's] concerns about widespread harm to the industry are self-serving and overblown."  Id. at 23.

On February 2, 2022, the California Superior Court for the County of Sacramento, in California Hispanic Chamber of Commerce v. Ross, Case No. 34-2021-80003765 (Cal. Sup. Ct.), concluded that "the promulgation of joint regulations is a condition precedent to the enforcement of the square-footage requirement governing sales of whole pork meat pursuant to Sections 25990(b)(2) and 25591(e)(3)."  See Dkt. 79-1 ("Sup. Ct. Ord.") at 17.  The case was brought by "a meat processing operation and business associations whose members sell whole pork meat in California," who argued, on state statutory grounds, that "without regulations fleshing out a written certification system supporting a good faith defense pursuant to Section 25993.1,[5] they should not be subject

---

[4] In 2020, pork sales in Iowa totaled $40.8 billion, and nearly 150,000 jobs in Iowa are associated with the Iowa Pork Industry.  McGonegle Decl. ¶ 8; id., Ex. A at 7.  There are about 24 million total hogs and pigs on Iowa Farms.  Id. ¶ 24.

[5] Section 25993.1 states that "[i]t shall be a defense to any action to enforce subdivision (b) of Section 25990 that a business owner or operator relied in good faith upon a written certification by the supplier that the whole veal meat, whole pork meat, shell egg, or liquid eggs at issue was not derived from a covered animal who was confined in a cruel manner, or from the immediate offspring of a breeding pig who was confined in a cruel manner."  Cal. Health & Safety Code § 25993.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

to penalties associated with the sale of nonconforming whole pork meat." Id. at 13.  The court held that Sections 25990(b)(2) and 25591(e)(3), which cover the Square Footage Requirement as applied to "business owners and operators . . . knowingly engag[ing] in the sale within the state" of "[w]hole pork meat that the business owner or operator knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of immediate offspring of a covered animal who was confined in a cruel manner," would not be enforceable until 180 days after the Final Regulations are enacted.  Sup. Ct. Ord. at 18; see also Cal. Health & Safety Code §§ 25990(b)(2), 25591(e)(3).

## III.  LEGAL STANDARD

### A.  Motion to Intervene

A party may intervene pursuant to Federal Rule of Civil Procedure 24 either as of right, or with permission of the Court.  "A party seeking to intervene as of right must meet four requirements: (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties."  Arakaki v. Cayetano, 324 F.3d 1078, 1083 (9th Cir. 2003).  A party who satisfies each of these requirements must be permitted to intervene.  Id.

By contrast, "[a] motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court."  San Jose Mercury News, Inc v. U.S. Dist. Ct., 187 F.3d 1096, 1100 (9th Cir. 1999).  The Ninth Circuit has set forth three prerequisites that an applicant seeking permissive intervention under Rule 24(b) must establish: "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common."  Id. (internal quotation omitted).

### B.  Preliminary Injunction

A preliminary injunction is an "extraordinary remedy."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  The Ninth Circuit summarized the Supreme Court's clarification of the standard for granting preliminary injunctions in Winter as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

follows: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Cal Pharms. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1053 (9th Cir. 2010). Serious questions are those "which cannot be resolved one way or the other at the hearing on the injunction." Bernhardt v. Los Angeles Cty., 339 F.3d 920, 926 (9th Cir. 2003) (quoting Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988)).

**IV.    DISCUSSION**

Before the Court are proposed intervenors' motion to intervene, and plaintiff's motion for a preliminary injunction. The Court addresses these motions in turn.

**A.    Proposed Intervenors' Motion to Intervene**

The proposed intervenors argue that they are entitled to intervene in this action as of right, and in the alternative, permissively. See MTI. Plaintiff argues that the proposed intervenors are not entitled to intervene as of right because their interests are adequately represented by defendants. MTI Opp. at 3-5. While plaintiff acknowledges that the proposed intervenors meet the requirements for permissive intervention, it argues that the Court should nevertheless use its discretion to deny permissive intervention because intervention would cause undue delay and prejudice the adjudication of the original parties' rights. Id. at 5-6.

The Court need not address intervention as of right, as the Court, in accordance with the parties, finds that the intervenors have established the three elements necessary to intervene with the Court's permission pursuant to Rule 24(b): (1) the proposed intervenors' application—filed less than a month after this action was transferred to this Court—is timely; (2) there are independent grounds for jurisdiction because this is a federal question case and the intervenors do not propose to raise any new claims, see Freedom from Religion Foundation, Inc. v. Geithner, 644 F.3d 836, 844 (9th Cir. 2011);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                     **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

and (3) there are questions of law and fact in common between the proposed intervenors defense, which is "based solely on legal arguments as to the insufficiency of Plaintiff's claims," MTI at 25, and the main action. See San Jose Mercury News, Inc., 187 F.3d at 1100.

Accordingly, the court **GRANTS** the proposed intervenors' motion to intervene.[6]

**B.      Plaintiff's Motion for a Preliminary Injunction**

Plaintiff moves for a preliminary injunction on its Due Process Clause and Commerce Clause claims.  PI Mot. at 16-29.[7]

Plaintiff seeks a preliminary injunction "prohibiting the enforcement of Proposition 12, its policies, practices and customs by Defendants, employees and agents, and all persons acting in privity and/or in concert with them (including private enforcers bringing claims pursuant to the Unfair Competition Law or any other applicable law)" pending resolution of the merits of this case, or until further order of this Court. Dkt. 24 at 13.  At a minimum, plaintiff requests relief from enforcement of both the Turn Around Requirements and the Square Footage Requirements until 180 days after the Final Regulations are promulgated; relief that it argues is in line with the California Superior Court's ruling in California Hispanic Chamber of Commerce v. Ross, Case No. 34-2021-80003765 (Cal. Sup. Ct.).  See PI Reply at 6.

      1.      Likelihood of Success on the Merits

To prevail on its motion for a preliminary injunction, IPPA must at a minimum establish that there are "serious questions" on the merits of at least one of its claims for

---

[6] At oral argument, counsel for proposed intervenors confirmed that the proposed intervenors will make joint filings, and that proposed intervenors' joint filings will be separate from defendants' filings.

[7] Plaintiff's notice of motion suggests that it was considering arguing that it was likely to succeed on its Privileges and Immunities Clause claim, and a claim that Proposition 12 is preempted by the Packer and Stockyards Act, see Dkt. 24 at 10-11, but plaintiff makes neither argument in its memorandum and its reply.  Accordingly, the Court declines to assess whether plaintiff is likely to succeed on these claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

relief. <u>Cottrell</u>, 622 F.3d at 1053. As discussed below, the Court finds and concludes that plaintiff fails to raise serious questions as to the merits of its claims.

### a. Due Process Clause Claims

Plaintiff argues that Proposition 12 violates the Due Process Clause, both on its face and as applied, in that it is unconstitutionally vague. "The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it violates the first essential of due process." <u>Johnson v. United States</u>, 576 U.S. 591, 595-96 (2015) (internal citations and quotation marks omitted).

"The void-for-vagueness doctrine prohibits the government from imposing sanctions under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." <u>Welch v. United States</u>, 578 U.S. 120, 124 (2016) (internal citations and quotation marks omitted). In an as applied challenge, a statute is void for vagueness and thus unconstitutional if the statute "'(1) does not define the conduct it prohibits with sufficient definiteness and (2) does not establish minimal guidelines to govern law enforcement.'" <u>United States v. Shetler</u>, 665 F.3d 1150, 1164 (9th Cir. 2011) (quoting <u>United States v. Wyatt</u>, 408 F.3d 1257, 1260 (9th Cir. 2005)).

(1)      <u>Facial Challenge</u>

Plaintiff contends that Proposition 12 is unconstitutionally vague in that it prohibits business owners and operators from "knowingly engag[ing] in the sale" of non-compliant whole pork meat, but fails to define the meaning of "engage in the sale." PI Mot. at 17-18 (citing California. Cal. Health & Safety Code §§ 25990-91). Plaintiff also argues that the statute "does not define when the violation occurs or who throughout the supply chain can be criminally prosecuted." PI Mot. at 18. Finally, plaintiff argues that Proposition 12 fails to give fair notice as to what constitutes a violation of the Turn Around Requirements and the Square Footage Requirements, as evidenced by the necessity of the Final Regulations, which plaintiff claims represents "a per se admission of the statute's vagueness." <u>Id.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

In opposition, defendants argue that "engaged in the sale" is not vague when read in the context of the statute, which makes clear that if a producer does not sell pork products in California, it has not engaged in a sale in the state. PI Opp. at 16. Likewise, defendants contends that the Turn Around Requirements and the Square Footage Requirements are clearly defined by the statute's plain text. Id. at 17.

In reply, plaintiff reiterates that "engaged in" is impermissibly vague. PI Reply at 16. As evidence of Proposition 12's purported vagueness, plaintiff claims that defendants in this case and the California Superior Court in California Hispanic Chamber of Commerce v. Ross have different interpretations of whether Proposition 12 prohibits persons within the supply chain of knowingly engaging in sales in California, and that these different interpretations are the result of Proposition 12's inherent vagueness. PI Reply at 16-17.

The Court finds and concludes that Proposition 12 is not facially vague. With respect to the Turn Around Requirements, the statute clearly states that confinement in a cruel manner refers to "confining a covered animal in a manner that prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely." Cal. Health & Safety Code § 25991(e)(1). Likewise, with respect to the Square Footage Requirements, the statute explicitly states that, "[a]fter December 31, 2021, confining a breeding pig with less than 24 square feet of usable floorspace per pig" also constitutes confinement in a cruel manner. Id. § 25991(e)(3). These proscriptions clearly define the activity prohibited by Proposition 12.

Accordingly, the gravamen of plaintiff's facial challenge is whether Proposition 12 is vague with respect to the circumstances in which producers must comply with its confinement standards. By the statute's plain terms, a violation of Proposition 12 could only occur if a member were to "engage in the sale within the state [of California]." Cal. Health & Safety Code § 25990(b). In the "definitions" section, the statute adds that "a sale shall be deemed to occur at the location where the buyer takes physical possession of an item covered by Section 25990." Id. § 25991(o). Accordingly, the statute makes clear that an out-of-state producer is subject to Proposition 12 only if it "engage[s] in a sale" to a buyer who "takes physical possession" in California of an item covered by Proposition 12. This is not unduly vague.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

      The California Superior Court's ruling in <u>California Hispanic Chamber of Commerce v. Ross</u> is not to the contrary.  Plaintiff contends that the Superior Court's ruling offered a "distinct interpretation[] for whether 'engaged in' the sale meant potential enforcement against all those throughout the supply chain."  PI Reply at 17.  However, the language plaintiff cites to in support of its argument is merely the Superior Court's statement that "[t]he Act [] prohibits persons in the supply chain from *knowingly* engaging in *intrastate* sales of food where such persons know or should know that the food is derived from a covered animal – whether originating within or outside California – that is confined in a cruel manner."  Sup. Ct. Ord. at 17 (citing Cal. Health & Safety Code § 25990(b)).  The Superior Court's understanding that only producers who *knowingly* "engage in the sale" *within California* are subject to Proposition 12 does not suggest any vagueness.  Rather, it confirms that Proposition 12 sufficiently defines the conduct it prohibits.  <u>Shetler</u>, 665 F.3d at 1164.

      In accordance with the foregoing, the Court concludes that plaintiff fails to raise any serious questions regarding the merits of its facial Due Process Clause challenge to Proposition 12.

(2)   <u>As Applied Challenge</u>

      With respect to its as applied challenge, plaintiff argues that Proposition 12 fails to address how producers can comply with both the Turn Around Requirements and Square Footage Requirements in actual real-world practice because the group housing environments "will result in breeding sows being placed in large group pens together where they cannot turn around freely without touching the sides of an enclosure or another animal."  PI Mot. at 19 (citing Dkt. 24-2 ("Johnson Decl.") ¶ 21).  Plaintiff also argues that Proposition 12 does not establish any minimum guidelines to govern law enforcement, and therefore invites arbitrary enforcement.  PI Mot. at 19 (citing <u>Hunt v. City of Los Angeles</u>, 638 F.3d 703, 712 (9th Cir. 2011)).  Additionally, plaintiff claims that Proposition 12 will result in arbitrary and inconsistent enforcement against out-of-state producers because California producers were given six years to comply with the Turn Around Requirements by Proposition 2, whereas Proposition 12 gave out-of-state producers only six weeks before the Turn Around Requirements went into effect on December 19, 2018.  <u>Id.</u> at 20-21.  Plaintiff argues that this discrepancy "renders the vast majority of the industry's pork illegal to sell into California and exposes out-of-state

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

producers and processors to criminal exposure and penalties that in-state California producers and processors will not face." Id. at 21.

In opposition, defendants argue that "there is nothing contradictory about Proposition 12's requirement that breeding pigs have adequate square footage to move about and turn around freely," and that, in any event, there is no "requirement in the statute that producers house breeding pigs in group housing (or any other particular type of housing)." PI Opp. at 18. Defendants also argue that Proposition 12 "is not vague as to whether Iowa producers who do not sell pork into California are in violation of the statute." Id. With respect to plaintiff's argument regarding the additional time afforded to in-state producers to comply with the Turn Around Requirements pursuant to Proposition 2, defendants respond that the argument "appears to be a reframing of Plaintiff's Commerce Clause discrimination claim rather than a Due Process Clause issue." Id. at 19.

In reply, plaintiff adds that its members produce pork that is part of the complex national pork supply chain, and often have no say on where their pork is sold due to the nature of the pork processing industry. PI Reply at 18-19. Given this situation, plaintiff claims that "out-of-state producers [are left to] guess whether they face enforcement (including potential imprisonment) by law enforcement who themselves are left to guess at whether a producer's conduct is prohibited." Id. Finally, plaintiff reiterates that "Proposition 12 fails to identify how producers are to comply with both Turn Around Requirements and Square Footage Requirements in actual, real-world practice," and that "[t]he uncertainty and ambiguity in Proposition 12's terms culminate with the failure to properly – if at all – guide enforcement officials on how enforce the Act." Id. at 19-20.

The Court finds that plaintiff's as-applied Due Process Clause challenge also fails. For the reasons identified above, the Court does not agree that out-of-state producers are left to guess regarding whether their conduct is prohibited. Rather, the Turn Around Requirements and the Square Footage Requirements are clear, and they apply to sales that are knowingly made within the state of California. Cal. Health & Safety Code §§ 25990(b), 25991(e)(1). Moreover, plaintiff's argument that Proposition 12 fails to provide guidance on how producers can concurrently comply with the Turn Around Requirements and the Square Footage Requirements does not represent an as-applied Due Process violation. As defendants correctly point out, "there is nothing contradictory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

about Proposition 12's requirement that breeding pigs have adequate square footage to move about and turn around freely."  PI Opp. at 18.

Plaintiff contends that Proposition 12's vague language invites arbitrary enforcement, and claims that a similar regulation was struck down in Hunt v. City of Los Angeles, 638 F.3d 703, 712 (9th Cir. 2011).  See PI Mot. at 19-20.  In Hunt, the plaintiff challenged vending ordinances that applied to the Venice Beach Boardwalk.  Hunt, 638 F.3d at 706.  The Ninth Circuit found that ordinance language that permitted individuals to sell "merchandise constituting, carrying or making a religious, political, philosophical or ideological message or statement which is inextricably intertwined with the merchandise'" invited arbitrary enforcement because "a police officer would have to engage in a 'highly fact-specific analysis' to determine whether a person selling merchandise is relaying a message, whether that message qualifies as being religious, political, philosophical, or ideological, and whether that message is inextricably intertwined with the products being sold. . . . Without any clear guidance from [the ordinance] on these issues, such determinations would necessarily be left to the subjective judgment of the officer."  Id. at 712.

Here, Proposition 12 presents no analogous issues, as neither "highly fact-specific analysis" nor "subjective judgment" is required in enforcing it given that, as discussed, Proposition 12 defines the conduct it prohibits with sufficient definitiveness.  Shetler, 665 F.3d at 1164.  Moreover, Proposition 12 establishes minimum guidelines to govern law enforcement, as it only proscribes "knowingly engaging in the sale within the state [of California]," which, for example, precludes enforcement of Proposition 12 against plaintiff's members for out-of-state sales made to pork processors.  Cal. Health & Safety Code § 25990(b).  In Shelter, the Ninth Circuit favorably cited the Eleventh Circuit's statement in United States v. Clavis, 956 F.2d 1079, 1094 (11th Cir. 1992), that "[t]he presence of the two intent elements, 'knowingly' and 'for the purpose' does much to eliminate the contention of vagueness or unfairness in application."  See Shetler, 665 F.3d at 1164.  The same reasoning applies here, given the "knowingly" language present in Proposition 12.

Finally, the Court will assess plaintiff's lead-time discrepancy argument as a Commerce Clause discrimination claim.  In sum, plaintiff has not raised any serious questions on the merits of its as applied Due Process Clause claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title    | Iowa Pork Producers Association v. Rob Bonta et al | | |

(3)    <u>Failure to Promulgate the Final Regulations</u>

Plaintiff argues that the State's failure to promulgate the Final Regulations, despite the statutory deadline of September 1, 2019, violates the Due Process Clause "by failing to provide individuals of ordinary intelligence a reasonable opportunity to know what conduct is actually prohibited, so they may act to avoid criminal prosecution." PI Mot. at 22.

In opposition, defendants argue that "where a statute is sufficiently clear, a lack of implementing regulations does not invalidate the statute on due process grounds." PI Opp. at 19 (citing <u>Robles v. Domino's Pizza, LLC</u>, 913 F.3d 898 (9th Cir. 2019)). Defendants add that Proposition 12 is sufficiently clear based on the statute's text, which provides clear notice of what producers must do to comply with the statute. PI Opp. at 20.

In plaintiff's reply, which followed the California Superior Court's ruling in <u>California Hispanic Chamber of Commerce v. Ross</u>, plaintiff argues that "[t]he plain language of Proposition 12 required CDFA and CDPH to write regulations to implement its requirements (Section 25993(a)) before the enforcement mechanisms (Section 25993(b)) became available." PI Reply at 12. In support of this argument, plaintiff notes that "before it mentions enforcement for any violation, Proposition 12 requires the promulgation of 'rules and regulations for the implementation' of the Act." <u>Id.</u> Plaintiff argues that defendants' failure to issue the Final Regulations "renders enforcement of Proposition 12 unconstitutional until at least after California complies with the regulations mandate," because without the implementing regulations, ordinary people do not have fair notice of the conduct that Proposition 12 punishes. <u>Id.</u> at 14.

Even though the Final Regulations remain pending well after the statutory deadline, the Court finds that Proposition 12, as applied to plaintiff's members, is not unconstitutionally vague. While plaintiff relies on <u>California Hispanic Chamber of Commerce</u> in support of its argument that implementing regulations are required before enforcement of the statue, that case concerned "a meat processing operation and business associations whose members sell whole pork meat in California," whose challenge to Proposition 12 was focused on the lack of regulations "fleshing out a written certification system supporting a good faith defense pursuant to Section 25993.1," and the petitioners' argument that "without a system tracking pork from farms of origin . . . suppliers cannot

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

furnish reliable assurances that their pork products derive from pigs confined with at least 24 square feet per pig." Sup. Ct. Ord. at 13-14. Here, plaintiff's members, as out-of-state producers of pork products, are not situated similarly to the petitioners in <u>California Hispanic Chamber of Commerce</u>, including because Section 25993.1's good faith defense, which applies to "a business owner or operator [who] relied in good faith upon a written certification by the supplier that the . . . whole pork meat . . . at issue was not derived from a covered animal who was confined in a cruel manner, or from the immediate offspring of a breeding pig who was confined in a cruel manner," by its terms does not apply to pork producers (such as plaintiff's members), who have direct knowledge of their covered animals' confinement conditions.

With respect to plaintiff's members, there is no Due Process Clause issue presented by the lack of Final Regulations. "[T]he Constitution only requires that [a party] receive fair notice of its legal duties, not a blueprint for compliance with its statutory obligations." <u>Robles v. Domino's Pizza, LLC</u>, 913 F.3d 898, 908 (9th Cir. 2019). Plaintiff cites no authority suggesting that a lack of implementing regulations, even when required by the statute, constitutes an as-applied void for vagueness Due Process Clause violation where the statute itself "give[s] fair notice of conduct that is forbidden or required." <u>F.C.C. v. Fox Television Stations, Inc.</u>, 567 U.S. 239, 253 (2012).[8]

Here, there is no question that Proposition 12 requires that "the Department of Food and Agriculture and the State Department of Public Health shall jointly promulgate rules and regulations for the implementation of this act by September 1, 2019," and that, to this point, the Final Regulations are not complete. However, despite the lack of Final Regulations, the provisions of Proposition 12 that apply to plaintiff's members are plain from the statute's text, as are the applicable enforcement standards. Accordingly, plaintiff has not raised any serious questions on the merits of its as applied Due Process Clause challenge to Proposition 12 to the extent the challenge is based upon defendants'

---

[8] For example, while plaintiff cites <u>Taylor v. Madigan</u>, 53 Cal. App. 3d 943, 950-51 (1975) and <u>People v. Vega-Hernandez</u>, 179 Cal. App. 3d 1084, 1092 (1986), those cases merely stand for the proposition that rights established by California constitutional provisions that require implementing legislation from the Legislature are not self-executing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

failure to timely promulgate the Final Regulations.  See Shetler, 665 F.3d at 1164; see also Robles, 913 F.3d at 909.

### b. Commerce Clause Claim

The Constitution extends to Congress the power to "regulate Commerce . . . among the several states."  U.S. Const., Art. I, § 8, cl. 3.  "Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012) ("Optometrists II") (quoting South–Central Timber Dev., Inc. v. Wunnicke, 467 U.S. 82, 87 (1984)).  "This limitation on the states to regulate commerce is 'known as the dormant Commerce Clause.'"  Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 947 (9th Cir. 2013) (quoting Optometrists II, 682 F.3d at 1148).  "The primary purpose of the dormant Commerce Clause is to prohibit 'statutes that discriminate against interstate commerce' by providing benefits to 'in-state economic interests' while 'burdening out-of-state competitors.'"  Id. at 947 (quoting CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 87 (1987) and Dep't of Revenue v. Davis, 553 U.S. 328, 337 (2008)).

"The Supreme Court has adopted a 'two-tiered approach to analyzing state economic regulation under the Commerce Clause.'"  Eleveurs, 729 F.3d at 948 (quoting Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 578–79 (1986)).  On the one hand, state regulations that (1) "discriminate against interstate commerce" or (2) "directly regulat[e] extra-territorial conduct" are generally "struck down . . . without further inquiry."  Id. at 948-49 (quoting Brown-Forman); see also Dakota v. Wayfair, Inc., 138 S. Ct. 2080, 2091 (2018) (explaining that such laws "face a virtually *per se* rule of invalidity").  However, state regulations that (3) "regulate even-handedly to effectuate a legitimate local public interest . . . will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  Wayfair, Inc., 138 S. Ct. at 2091  (quoting Pike v. Bruce Church, Inc., 397 U.S. 137 (1970)); see also Energy & Env't Legal Inst. v. Epel, 793 F.3d 1169, 1171 (10th Cir. 2015) (Gorsuch, J.) (explaining that "dormant commerce clause cases are said to come in [these] three varieties").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

Plaintiff contends that Proposition 12 is unconstitutional on all three grounds.

(1)     <u>Discriminatory Purpose and Effect</u>

Discrimination against out of state commerce "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." <u>Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.</u>, 511 U.S. 93, 99 (1994). "The party challenging a regulation" on this basis "bears the burden of establishing that a challenged statute has a discriminatory purpose or effect under the Commerce Clause." <u>Int'l Franchise Ass'n, Inc. v. City of Seattle</u>, 803 F.3d 389, 400 (9th Cir. 2015) (internal citation and marks omitted).

Plaintiff contends that Proposition 12 facially discriminates against its members because it targets out-of-state entities in a manner that benefits in-state interests at the expense of out-of-state interests, in the face of controlling authority holding that laws motivated by economic protectionism "'are subject to a virtually per se rule of invalidity.'" PI Mot. at 23-24 (quoting <u>United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.</u>, 550 U.S. 330, 338 (2007)). Plaintiff points to the six years afforded to in-state producers to comply with the Turn Around Requirements pursuant to Proposition 2, in contrast with the six weeks afforded to out-of-state producers pursuant to Proposition 12, as well as the fact that the stated "purpose" of Proposition 12 is to prevent "negative fiscal impacts on the state of California," in asserting that Proposition 12 is discriminatory on its face and in its purpose. PI Mot. at 24 (citing 2018 Cal. Legis. Serv. Prop. 12 (PROPOSITION 12) (WEST)). With respect to discriminatory effect, plaintiff again highlights the "lead time" differences between Proposition 2 and Proposition 12. PI Mot. at 25. Plaintiff also points to the Prop. 12 FAQs, which it argues "will only benefit the California producers and be meaningless to out of state producers." <u>Id.</u>

In opposition, defendants note that Proposition 12 is neutral on its face, and that "[t]he prohibition on the sale of whole pork meat from an animal confined in a cruel manner applies to any 'business owner or operator' selling 'within the state.'" PI Opp. at 22 (citing Cal. Health & Safety Code §§ 25590-91). As to discriminatory purpose, defendants argue that neither the text of Proposition 12 nor anything else suggest that Proposition 12 was motivated by a discriminatory intent. PI Opp. at 23. Finally, with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

respect to discriminatory effect, defendants argue that, by now, plaintiff has had over three years to come into compliance with the Turn Around Requirements, and that their argument that the Prop. 12 FAQs will only benefit California producers is "nonsensical" because "[a]ll producers wishing to sell their whole pork meat into California, whether located inside or outside of the state, must comply with the Square Footage Requirements as of January 1, 2022." Id. at 24.

In reply, plaintiff reiterates its argument that the "lead time" discrepancy between Proposition 2 (in-state producers) and Proposition 12 (out-of-state producers) has had a discriminatory effect on out-of-state producers. PI Reply at 21-22. Plaintiff adds that the Prop. 12 FAQs "exacerbate an already discriminatory law, effectively ignoring the fact that no legal sell through is allowed for whole pork meat that violates the Turn Around Requirements after the effective date of the Act." Id. at 23.

As a preliminary matter, Proposition 12 is facially neutral. As defendants correctly argue, "[t]he prohibition on the sale of whole pork meat from an animal confined in a cruel manner applies to any 'business owner or operator' selling 'within the state.'" PI Opp. at 22 (citing Cal. Health & Safety Code §§ 25590-91). Proposition 12 makes no distinction whatsoever between in-state and out-of-state pork producers. See Cal. Health & Safety Code § 25590 et seq. "[A] statute that treat[s] all private companies exactly the same does not discriminate against interstate commerce. . . . This is so even when only out-of-state businesses are burdened because there are no comparable in-state businesses." Eleveurs, 729 F.3d at 948 (internal quotation marks and citations omitted).

With respect to discriminatory purpose, plaintiff first argues that "the 'purpose' language [of Proposition 12] expressly states that it is designed to prevent "negative fiscal impacts on the State of California." PI Mot. at 24 (citing 2018 Cal. Legis. Serv. Prop. 12 (PROPOSITION 12) (WEST)). However, plaintiff's partial quote of Proposition 12's "purpose" language is misleading. In full, the purpose of Proposition 12 is "to prevent animal cruelty by phasing out extreme methods of farm animal confinement, which also threaten the health and safety of California consumers, and increase the risk of foodborne illness and associated negative fiscal impacts on the State of California." 2018 Cal. Legis. Serv. Prop. 12, § 2. This language is not evidence that Proposition 12 was "motivated by 'simple economic protectionism.'" United Haulers, 550 U.S. at 338 (quoting Philadelphia v. New Jersey, 437 U.S. 617, 624 (1978)). Rather, it suggests that Proposition 12 represents an effort to prevent animal cruelty, and to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

prevent negative fiscal impacts on the state of California "associated" with "the risk of foodborne illness." 2018 Cal. Legis. Serv. Prop. 12, § 2. Plaintiff offers no other evidence that suggests that Proposition 12 was motivated by economic protectionism or an effort to benefit in-state producers at the expense of out-of-state producers.

Finally, with respect to discriminatory effect, plaintiff emphasizes that while in-state producers had six years to comply with the Turn Around Requirements pursuant to Proposition 2, out-of-state producers subject to Proposition 12 had only six weeks. Plaintiff also argues that the Prop. 12 FAQs—which provide that pork meat that was not in compliance with the Square Footage Requirements, but was already in inventory or in commerce by December 31, 2021, will remain legal to sell in California—have a discriminatory effect because they fail to provide out-of-state producers relief from the Turn Around Requirements.

In N. Am. Meat Inst. v. Becerra, 420 F. Supp. 3d 1014 (C.D. Cal. 2019), aff'd, 825 F. App'x 518 (9th Cir. 2020), this Court noted that the "lead time" discrepancy between Proposition 2 and Proposition 12 with respect to the Turn Around Requirements "*could* [represent] an arguable basis to claim that Proposition 12 discriminates against out-of-state commerce," because in Eleveurs "the sales prohibition came into effect against in-state and out-of-state producers at the same time, so the 'lead time' allotted for compliance was not an issue in the discrimination analysis." N. Am. Meat Inst, 420 F. Supp. 3d at 1028 n. 7.

However, upon further review of Eleveurs, the Court is not convinced that the "lead time" discrepancy raises a serious question that Proposition 12 has a discriminatory effect. In Eleveurs, the Ninth Circuit found that "a statute that treats all private companies exactly the same" is not discriminatory "even when only out-of-state businesses are burdened because there are no comparable in-state businesses." Eleveurs, 729 F.3d at 948. Here, as previously noted, Proposition 12 treats all companies the same. Plaintiff's discriminatory effect argument is that a different law, passed ten years earlier, treated in-state companies differently in that it gave them more time to comply with the Turn Around Requirements. However, given that under Eleveurs there is no discriminatory burden on out-of-state businesses even where no comparably burdened in-state business exists, the Court finds and concludes that there is also likely no discriminatory burden where in-state business are *already in compliance* with the same

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

regulatory standards, even if in-state pork producers had more time to comply with Proposition 2 than out-of-state pork producers had to comply with Proposition 12.

Moreover, plaintiff's argument that the "lead-time" discrepancy has had a discriminatory effect on its members is belied by the fact that plaintiff filed this action almost three years after Proposition 12 was passed. Plaintiff fails to provide any authority suggesting that the discriminatory burden of a particular law must be analyzed in connection with previous regulations. Even in N. Am. Meat Inst. v. Becerra, this Court stated that it was "less than sanguine about the merits of [plaintiff's] 'lead time' argument" because, like the IPPA here, NAMI "cite[d] no case law for the proposition that a statute can have a discriminatory effect if a prior statute, imposing the same regulatory obligations, [gave] in-state entities more time to comply." N. Am. Meat Inst, 420 F. Supp. 3d at 1029 n. 9.

In sum, on the record before it, the Court finds that Proposition 12 is not discriminatory because it "treats all private companies exactly the same." Eleveurs, 729 F.3d at 948. Accordingly, the Court concludes that plaintiff's discriminatory effect claim fails to raise any questions on the merits that would support the issuance of a preliminary injunction.

(2)    Direct Regulation of Extraterritorial Conduct

Plaintiff next claims that "Proposition 12 seeks to create a national regulation on sow confinement practices," in violation of the extraterritoriality doctrine. PI Mot. at 28. Plaintiff adds that the practical effect of Proposition 12 will be an increase in pork prices. Id.

Despite plaintiff's argument, "state laws that regulate only conduct in the state, including the sale of products in the state, do not have impermissible extraterritorial effects." Nat'l Pork Producers Council v. Ross, 6 F.4th 1021, 1029 (9th Cir. 2021). "Even if a state's requirements have significant upstream effects outside of the state, and even if the burden of the law falls primarily on citizens of other states, the requirements do not impose impermissible extraterritorial effects" unless they "directly regulate[] conduct that is wholly out of state." Id.

In Nat'l Pork Producers Council, the Ninth Circuit upheld the grant of a motion to dismiss a claim challenging Proposition 12 on dormant Commerce Clause grounds.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title    | Iowa Pork Producers Association v. Rob Bonta et al | | |

Therein, the Ninth Circuit noted that "the extraterritoriality principle is 'not applicable to a statute that does not dictate the price of a product and does not tie the price of its in-state products to out-of-state prices,'" and that "Proposition 12 is neither a price-control nor price-affirmation statute, as it neither dictates the price of pork products nor ties the price of pork products sold in California to out-of-state prices." Nat'l Pork Producers Council, 6 F.4th at 1028 (quoting Eleveurs, 729 F.3d at 951). Similarly, in N. Am. Meat Inst. v. Becerra, which affirmed the denial of a preliminary injunction, the Ninth Circuit stated that "the district court did not abuse its discretion in concluding that Proposition 12 does not directly regulate extraterritorial conduct because it is not a price control or price affirmation statute." 825 F. App'x 518, 520 (9th Cir. 2020).

While plaintiff "respectfully submits that extraterritoriality rulings" in Nat'l Pork Producers Council and N. Am. Meat Inst. were incorrect, it acknowledges that those cases are "currently binding over corresponding claims in this Court." PI Reply at 23-24. Accordingly, plaintiff has not raised any serious questions on the merits of its extraterritoriality claim.

(3)     Substantial Burden on Interstate Commerce

Plaintiff claims that Proposition 12 will advance no real health or safety benefit, and that the ballot initiative record was devoid of evidence that Proposition 12 will protect farm animals from cruel confinement practices. PI Mot. at 27. Plaintiff also argues that "[i]t is widely accepted that longstanding industry best practices of individual gestation confinement is better for the health and safety of both breeding pigs and their offspring." Id. (citing Johnson Decl., ¶ 70). Additionally, plaintiff claims that "Proposition 12's only theoretical benefit is the unconstitutional leveling of the economic playing field for in-state producers, which is not a legitimate interest." PI Mot. at 27. Finally, plaintiff argues that even if Proposition 12 served a legitimate state interest, the fiscal impacts on interstate commerce, including the possibility of a 4 percent increase in nationwide pork prices, and/or pork shortages, are excessive to any such interest. Id. at 27-28.

Pursuant to Pike v. Bruce Church, Inc., 397 U.S. 137 (1970), a statute may violate the Commerce Clause if "the burden [it] impose[s] on [interstate] commerce is clearly excessive in relation to the putative local benefits." Id. at 142. "[U]nder Pike, a plaintiff must first show that the statute imposes a substantial burden before the court will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

'determine whether the benefits of the challenged laws are illusory,'" or otherwise inadequate, to justify the burden. Eleveurs, 729 F.3d at 951-52 (quoting Optometrists II, 682 F.3d at 1155).

"[M]ost statutes that impose a substantial burden on interstate commerce do so because they are discriminatory" or purport to regulate extraterritorially, as discussed above. Eleveurs, 729 F.3d at 952 (citing Optometrists II, 682 F.3d at 1150). "[L]ess typically," courts have found that non-discriminatory, non-extraterritorial statutes may still "impose significant burdens on interstate commerce" when they cause the "'inconsistent regulation of activities that are inherently national or require a uniform system of regulation.'" Eleveurs, 729 F.3d at 952 (quoting Optometrists II, 682 F.3d at 1148). The need for uniformity generally arises in challenges to laws affecting "interstate transportation," as well as cases involving sports leagues. See Eleveurs, 729 F.3d at 952 (observing that "examples of 'courts finding uniformity necessary' fall into the categories of 'transportation' or 'professional sports leagues'") (citing Valley Bank of Nevada v. Plus Sys., Inc., 914 F.2d 1186, 1192 (9th Cir. 1990)). The Ninth Circuit has held that "a regulation [which] does not regulate activities that inherently require a uniform system of regulation and does not otherwise impair the free flow of materials and products across state borders . . . is not a significant burden on interstate commerce." Optometrists II, 682 F.3d at 1154–55.

While IPPA argues that Proposition 12 will have negative financial impacts on plaintiff's members and on consumers through increased prices, "[d]emonstrating that state regulations impose substantial costs on interstate operations is not sufficient to establish a burden calling for balancing under Pike." S. Pac. Transp. Co. v. Pub. Utilities Comm'n of State of Cal., 647 F. Supp. 1220, 1227 (N.D. Cal. 1986), aff'd, 820 F.2d 1111 (9th Cir. 1987) (citing Bibb v. Navajo Freight Lines, 359 U.S. 520, 526 (1959) and Burlington Northern Railroad Co. v. Department of Public Service, 763 F.2d 1106, 1114 (9th Cir. 1985) ("The claims by Burlington Northern that operation of the Browning station results in a loss to the company does not, without more, suggest that the Montana statute impedes substantially the free flow of commerce from state to state."); see also Exxon Corp. v. Gov. of Md., 437 U.S. 117, 127-28 (1978) ("[T]he [Commerce] Clause protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|---|---|---|---|
| Title | Iowa Pork Producers Association v. Rob Bonta et al | | |

Moreover, the Ninth Circuit's recent rulings in Nat'l Pork Producers Council and N. Am. Meat Inst. are again controlling. While plaintiff argues that longstanding pork production industry practices are best, "a non-discriminatory regulation that 'precludes a preferred, more profitable method of operating in a retail market'" does not place a significant burden on interstate commerce. Nat'l Pork Producers Council, 6 F.4th at 1032 (citing Optometrists II, 682 F.3d at 1154–55). Discussing Proposition 12 directly, the Ninth Circuit has stated that "[e]ven if producers will need to adopt a more costly method of production to comply with Proposition 12, such increased costs do not constitute a substantial burden on interstate commerce . . . [n]or do higher costs to consumers qualify as a substantial burden on interstate commerce." Nat'l Pork Producers Council, 6 F.4th at 1033. Given this controlling authority, the Court "'need not determine whether the benefits of the challenged law are illusory.'" Id. at 1033 (citing Rosenblatt v. City of Santa Monica, 940 F.3d 439, 452 (9th Cir. 2019)).

Because there is no serious argument that Proposition 12 imposes any substantial burden on interstate commerce, the Court concludes that plaintiff has not raised a serious question as to its Pike claim.

2.    Remaining Preliminary Injunction Factors

The Court recognizes that complying with Proposition 12 could impose potentially significant costs upon plaintiff's members, including increased production costs and facility renovations. See Dkt. 24-3 ("Tonsor Decl.") ¶¶ 8-23. In opposition, defendants argue that plaintiff's delay in bringing this action (filing suit almost three years after Proposition 12 was approved) implies a lack of urgency and a concomitant lack of irreparable harm.

Since the Eleventh Amendment may prevent the recovery of plaintiff's compliance costs, these potentially noncompensable money damages can constitute irreparable injury. See California Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847, 852 (9th Cir. 2009), vacated on other grounds, 565 U.S. 606 (2012) (holding that money damages are irreparable where a plaintiff can "obtain no remedy in damages against the state because of the Eleventh Amendment"); accord Video Gaming Techs., Inc. v. Bureau of Gambling Control, 356 F. App'x 89, 93 (9th Cir. 2009) (holding that "monetary injuries may be irreparable if Eleventh Amendment sovereign immunity will bar a party from ever recovering those damages in federal court").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:21-cv-09940-CAS (AFMx) | Date | February 28, 2022 |
|----------|--------------------------|------|-------------------|
| Title    | Iowa Pork Producers Association v. Rob Bonta et al | | |

However, in light of the Court's conclusion that there are no serious questions regarding the merits of plaintiff's constitutional challenges, the Court declines to address plaintiff's arguments on the remaining irreparable harm and balance of hardships factors. See Global Horizons, Inc. v. United States DOL, 510 F.3d 1054, 1058 (9th Cir. 2007) ("Once a court determines a complete lack of probability on the success or serious questions going to the merits, its analysis may end, and no further findings are necessary.").

**V.     CONCLUSION**

In accordance with the foregoing, the Court **GRANTS** proposed intervenors' motion to intervene and **DENIES** plaintiff's motion for a preliminary injunction.

IT IS SO ORDERED.

| | 00 | : | 05 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |